## W. H. LIPSCOMB *v.* STATE OF MISSISSIPPI,

1. CRIMINAL LAW. *Continuances. Mental or physical weakness of accused. Affidavits. Physicians.*

   A defendant is not entitled to a postponement or continuance of a criminal case merely because he makes affidavit, and procures physicians to join him therein, stating that, owing to his mental or physical condition, or both, he is unable to endure the ordeal of a trial or to properly conduct his defense. Such matters of fact can be controverted by the state.

2. SAME. *Discretion of court. Appearance of party. Evidence.*

   Applications for continuances of criminal cases, based on the mental or physical weakness of the accused, are, even more largely than when based on other grounds, addressed to the discretion of the trial court. In determining such applications, the trial judge may consider the appearance of the accused.

3. SAME. *Appeal. Reversal.*

   A conviction will not be reversed, on appeal, because of the denial of such an application, unless the same be an extreme abuse of discretion, and, in determining this, the supreme court will look to the entire record of the trial as a completed one.

4. SAME. *Practice suggested.*

   If, on the hearing of such an application, the representative of the state suspect feigned illness or temporary mental weakness for the purpose of the application, he should obtain the attendance of impartial physicians as expert witnesses, and demand of the accused that he submit to an examination of his person in the presence of the court, and allow such witnesses to be cross-examined by the accused and his counsel. If the accused refuse to submit to an examination, the refusal itself is evidence for the consideration of the court, and, in a doubtful case, would ordinarily justify a denial of the application.

5. SAME. *Constitutional law. Section 26, constitution of 1890.*

   Section 26, constitution of 1890, providing that, in criminal trials, the accused shall have the right to be confronted by the witnesses

Syllabus.

against him, primarily relates to trials of the guilt or innocence of the accused. Whether it relates to hearings of applications for continuances, *quære?*

6. **SHERIFF.** *Interested. Displacement. Coroner. Code of 1892, § 828.*

The statute, code of 1892, § 828, providing for the displacement of the sheriff if he be a party to, or interested in, or, for other cause, incapable or unfit to execute his office in any particular case, and requiring the coroner to act in his stead therein, is wise, and the judges of trial courts should exercise a liberal discretion in its enforcement.

7. **SAME.** *Code of 1892, § 828. Ib., § 3079. Deputy.*

The above section of the code (§ 828) and § 3079, providing for the deputy sheriff to act temporarily in place of his deceased principal, are to be construed together, and, so construing them, the former does not require the performance of official duties by a deputy sheriff whose principal is living and disqualified.

8. **SAME.** *Special venire. Submission to court of names of deputies. Code 1892, § 2389.*

A special venire will not be quashed because the trial judge caused the sheriff to submit to him, before the service of the writ, the names of the deputies selected to execute the writ, that they might be shown to the attorneys in the case, with a view of receiving objections to the proposed deputies, or because, on objection by the state's attorney, two of the persons named were not appointed, the sheriff appointing two unobjectionable persons in their places. If such a proceeding be irregular, the case is within code of 1892, § 2389, providing that juries irregularly summoned shall be deemed legal after being impanelled and sworn.

9. **JUDGES.** *Sources of information. Misconduct of ministerial officers. Presumption.*

Judges may properly draw conclusions touching the bias of an officer of the court, or his unfitness to act in a particular case, from observation, and the law does not require a judge, who is convinced that official misconduct is corrupting the fountain of justice, to submit thereto, even if his convictions arise alone from personal observation. The presumption is that a judge does not act without reason in controlling the acts of ministerial officers of court.

10. **COURTS.** *Beginning of trial. Prolongation of term. Code 1892, § 933.*

Under code 1892, § 933, providing for the prolongation of the term of the court, as fixed by the general statute, if the trial or hearing of

any cause has been commenced, and is in progress when the time for the expiration of the term arrives, and that the court may proceed with the cause as if the stated term had not expired, the trial or hearing of a criminal case has begun and is in progress as soon as, but not before, the court enters upon the impaneling of a jury for the trial of the matters of fact presented by the pleadings.

11. WITNESSES. *Death. Evidence on previous trial.*

In criminal trials, evidence of the testimony delivered in a previous trial of the case by a witness who has since died is admissible. Owens *v.* State, 63 Miss., 450.

12. EVIDENCE. *Dying declarations; parts admissible.*

Where the trial court rules that parts of a dying declaration are, and other parts are not, admissible for the state over specific objections by the accused, and the accused afterwards offers the entire declaration in evidence, he cannot complain in the supreme court of the rulings on his objections to the declaration.

13. SAME. *Waiver of objection.*

Where a party makes objection, and duly excepts to the admission of evidence of a fact, he waives his exception if he offer direct evidence establishing the same fact.

14. JURORS. *Competency. After verdict. Affidavits.*

In order to set aside a verdict on the ground of the incompetency of a juror, who qualified on his *voir dire*, the accused and his counsel should both have been, when the juror was accepted, ignorant of the facts rendering him incompetent, and both must make affidavit of such ignorance.

15. SAME. *Conflict of evidence.*

The finding of the court of original jurisdiction that a juror was competent, when his integrity is assailed by one convicted of crime on motion to set aside the verdict, will not be reversed by the supreme court where the evidence on the subject is conflicting.

FROM the circuit court of Kemper county.

HON. GREEN B. HUDDLESTON, Judge.

W. H. Lipscomb, the appellant, was defendant in the court below. The facts are fully stated in the opinion of the court. For previous report of case, see *Lipscomb* v. *State*, 75 Miss., 559.

76 Miss.—15

*J. H. Neville* and *J. H. Currie*, for appellant.

The remarkable medical board wrongfully appointed in this case presumed, after an examination of the appellant, lasting not over three hours (an examination by each member of the board personally), that there was nothing in the physical or mental condition of the appellant to forbid his going into a trial, and the court accepted this opinion over the sworn testimony of appellant and his attending physician.   This court knows, despite the opinion of the medical board, that, if the facts testified to by appellant and his attending physician are true (and they are nowhere denied), it was a travesty on justice to compel the appellant to enter upon his trial at that time. Appellant was deprived of a constitutional right when he was denied the right to cross-examine the physicians who had been appointed by the court to examine him.   Conceding, for argument's sake, that the court had the right to appoint a board of medical examiners to examine and report on the mental and physical condition of appellant, the court did not have the right to receive the result or conclusion of their examination in writing and act upon the same.   In other words, the court did not have the right to receive their written report on appellant's motion for a continuance.   When these gentlemen composing this board had made their examination and were ready to report to the court, or give their evidence on the motion then pending before the court, appellant had the constitutional right to be confronted by those witnesses, and had the further right to be present and cross-examine them, all of which was denied him, for the record in this case discloses the fact that this remarkable report of this remarkably created board was received by the court in the absence of the defendant.   The constitution of the state, section 26, gives the defendant the right to be confronted by the witnesses against him in all criminal prosecutions.   This was a criminal prosecution, and this motion was the hearing of a portion of appellant's trial. *Sperry* v. *Commonwealth*, 9 Leigh, 623; 33 Am. Dec., 261;

*Fight* v. *State*, 7 Ohio; 28 Am. Dec., 626; *Prime* v. *Commonwealth*, 18 Penn. St., 103; *Waller* v. *State*, 40 Ala., 333;. Wharton's Crim. Plead. & Prac., sec. 540; 1 Bishop's Crim. Prac., 231; *Jackson* v. *Commonwealth*, 19 Grat., 656; *Andrews* v. *State*, 34 Tenn., 550; *Holton* v. *State*, 2 Fla., 476; *Witt* v. *State*, 5 Cold., 11; *Gladden* v. *State*, 12 Fla., 577; *State* v. *Barnes*, 59 Mo., 154; *Younger* v. *State*, 2 W. Va., 579; *State* v. *Buckner*, 25 Mo., 167; *Maurer* v. *People*, 43 N. Y., 1; *Sweden* v. *State*, 19 Ark., 205; *ex parte Bryan*, 44 Ala., 402; *People* v. *Kohler*, 5 Cal., 72; *Hill* v. *State*, 17 Wis., 675; *State* v. *Alman*, 64 N. C., 364.

While it is true the matter of granting or refusing a continuance is a matter in the discretion of the trial court, yet it is also equally true that it is a legal discretion, and, when it appears to have been abused, the appellate court should not, and does not, hesitate to reverse a case for such abuse of discretion, as this court has time and time again held. This court cannot confidently say, looking back on this whole trial, that the appellant was not deprived of some legal right by the action of the court in rushing him into a trial in his physical and mental condition.

We submit that, under the testimony of this case, the sheriff was not interested in this cause, nor was he, for other cause, incapable or unfit to execute his office, and his displacement and the appointment of the coroner was unauthorized, and, if unauthorized, was illegal, and thus another one of appellant's substantial rights was infringed by the courts. *People* v. *Welch*, 49 Cal., 177.

There was a clear interference by the court with the sheriff in the discharge of a duty which had been placed by the law on that officer; a duty in the discharge of which no judicial officer or partisan counsel had any right to interfere or make suggestions. Code 1892, § 4116, *Conner* v. *State*, 25 Ga., 515; *State* v. *Doyall*, 13 La. Ann., 418. The reasons why a defendant charged with crime should not be called upon to choose between persons who are about to be

selected as bailiffs to summon a list of persons to serve as jurors on the trial of his case are too many and too patent to need any mention by us, and the reasons why those who are engaged in his prosecution should not have anything to do with this matter of approving or disapproving of the persons selected by the sheriff to discharge this duty are equally as numerous and as strong, hence the law has left this matter to the sheriff, and the record of this case discloses the fact that he did not discharge that duty without interference. The law never contemplated that the court should hold the sheriff up in the discharge of his duty, and refuse to swear in the officers selected by him to serve process, until one or the other or both of the parties to the cause in which the process was to be served was satisfied with the person so selected.

The questions raised by the sixth and seventh assignment of error call for a construction by this court of § 933 of the code of 1892. So far as we have been able to find, only two states in the union have statutes similar to this, and those two are Indiana and North Carolina. In neither of these states has the precise question at bar been determined, so far as we have been able to ascertain.

In the case at bar, we earnestly insist that the court was without jurisdiction to proceed after the time fixed by law for the termination of the court, for the reason that the trial of the case had never commenced, nor was it in progress. The fact is that no single juror had been accepted by the defendant, or even tendered him for acceptance. We insist that when the parties, styling themselves the circuit court of Kemper county, assembled, on March 21, 1898, they were not a court, and were, therefore, without authority to proceed to hear this cause. We presume that it will not be admitted or questioned that, if the court was without jurisdiction, the judgment rendered by it is void, and can be inquired into here. Parties cannot consent to try a case at a term of court when the court has not jurisdiction to try the case, or which is not being lawfully

held. *Wicks* v. *Ludwig*, 9 Cal., 173; *Norwood* v. *Kenfield*, 34 Cal., 329; *Parker* v. *Munday*, Cox (N. J. Rep.), 70; *Germond* v. *People*, 1 Hill (N. Y.), 343; *Mills* v. *Commonwealth*, 13 Pa., 627.

If it should be contended that the circuit court of Kemper county had jurisdiction at the time to try this case, for the reason that the trial had commenced and was in progress, then we as stoutly contend that there was no commencement of that trial or hearing of this case, and that the case was not in progress. What is a trial? Mr. Bouvier, in his law dictionary, defines a trial as " The examination, before a competent tribunal, according to the laws of the land, of the facts put in issue in a case, for the purpose of determining such issue." Vol. 2, p. 749. We find, in the Century Dictionary and Cyclopœdia, this definition of a trial: " In law, the judicial investigation and determination of the issues between parties—that part of litigation which consists in the examination by the court of the point in controversy—the hearing of the evidence, if any, and the determination of the controversy, or final submission of the cause for such determination. . . . When used of a criminal cause, 'trial' commonly means the proceedings in open court, after the pleadings are finished, and it is otherwise ready, down to and including the rendition of the verdict. Not extending, on the one hand, to such preliminary steps and the arraignment and giving in of the pleas, it does not comprehend, on the other hand, hearing on appeal."

Under the definitions given by these learned authors, we insist that, in this case, the trial had not commenced, nor was it in progress. When does the trial of a criminal case begin, or commence? In our opinion, the trial of a criminal case cannot be said to begin until jeopardy begins; and it will be interesting to know when jeopardy begins. The best authorities all agree that whenever a person shall have been given in charge, on a criminal indictment, to a regular jury, that jeopardy then begins, and not before. Suppose that the constitution of 1869

was the organic law of this state to-day, and that the statute now under consideration was the law of the land. Suppose a defendant charged with murder was placed upon his trial and the hour had arrived for the termination of the court, by operation of law, and a full jury had just been elected and empanelled, and the court, of its own motion, or at the instance of the state, should declare that the case could not be finished before the expiration of the term, and thereupon discharge the jury, remand the prisoner, and continue the case until the next term of the court, would it be contended by anyone that this would not constitute jeopardy? Suppose that, on the other hand, the time for the adjournment of the court had arrived, and only a portion of the jury had been selected or declared competent by the court, and not one member of it selected by the defendant, when the court should discharge the jury and continue the case, would anyone contend that the prisoner had ever been in jeopardy?

Surely the beginning of jeopardy is the beginning of a criminal trial, and, in this case, when the hour arrived for the termination of the circuit court of Kemper county by law, the hearing of this trial had not commenced, nor was the case in progress, and the court, when it assembled on Monday morning, the twenty-first day of March, 1898, at a time not fixed by law for the holding of the circuit court of Kemper county, was without jurisdiction to hear and determine this cause, and the judgment rendered by the court, on the verdict found by that jury, was absolutely void.

The last assignment of error, to which we call the attention of the court, is the action of the court in refusing, on motion to do so, to set aside the verdict of the jury on the affidavit filed showing the incompetency of the juror, Davis, and the proof offered on said motion. The proof on this motion, to our mind, discloses a state of facts that is intolerable. It shows that a man who had formed an opinion as to the guilt of the defendant, and who was combative in that opinion, going to the extent of refuting

statements made which were friendly to the defendant, actually came to the court, swore that he had no opinion, and could give this defendant a fair and impartial trial, and served upon the jury. We submit to the court, without further argument, that the statement of facts disclosed by the record in this case, as to the mind of this juror, Davis, entitles the defendant to a new trial, and we commend the language of Judge Stockdale, the organ of this court, in the case of *Jeffries* v. *State*, 74 Miss., 675, as being emphatically appropriate here.

*W. R. Harper*, on same side.

1. It is a defendant's right not alone to be heard, but also to be given an opportunity to be heard when he is mentally and physically able to make himself heard—able to advise and direct his counsel in the management of his case. It would seem that Dr. Lipscomb's mental and physical condition was such that he was not able to take part in his own trial, except to be physically present.

2. If we admit, for the sake of argument, that sufficient grounds were shown for removing the sheriff, there remains no justification whatever for passing over the legally and regularly constituted deputy sheriff and substituting for him the coroner. The statute is clear and explicit that both the sheriff and his deputy must be disqualified.

3. The right to continue a term of court into the next week must rest upon our statute. The real purpose and intention of that statute was to apply only to those cases where, at the common law, jeopardy had attached. No trial of the cause had begun until jeopardy had attached, to wit, when the jury had been sworn. The word "trial," as used in that statute, means "trial by jury." No trial by the jury could have been begun until the jury, the trial body, had been organized. All else was preliminary, just as much as the making of the indictment, summoning the witnesses, arresting the defendant, etc.

How can there be a trial without the two constitutional elements, to wit, a jury and a judge? The trial could not have been begun until both were there to try. The getting the jury, just like getting the judge, are preliminaries necessary to the trial, but not the trial itself. The trial not having been legally entered upon, and jeopardy not having attached, it was the duty of the court to continue the cause until the next term, as it did not come within the terms of our statute authorizing the term to be so extended.

4. The juror, Davis, duly qualified and was accepted, but the defendant's counsel, though alert and watchful, did not know, and could not know, of his bias and incompetency until after the trial had been concluded. The court knows, of its own knowledge, that many things can be learned after a trial that are kept hidden before or during the trial. And so it was that, after the trial, it, for the first time, became known to defendant that the juror, Davis, who had tried him, had already made up his mind of Lipscomb's guilt before he entered the jury box. If a juror ever was disqualified to try a case, that juror was W. H. Davis.

*Cochran & Bozeman*, for appellee.

It would have been clearly competent for the court to determine, from the appearance of the appellant and the manner of the witness while testifying, whether appellant was in a condition to stand his trial, and to have ruled upon the motion without further inquiry as to its merits. It was, unquestionably, competent and lawful for the court to inform itself of the merits of the motion in whatever manner it deemed proper. There was no error in overruling appellant's application for a continuance. The record shows that appellant was in a condition, mentally and physically, to stand the trial, and that both he and his witness (Kellis) were in error when they said that he could not stand his trial. The testimony of appellant himself proves that

he was in complete possession of his mental faculties, and that he testified in a clear and intelligent manner.

The trial of the appellant would have been a farce with a sheriff who would have used all the power of his official position to have the appellant acquitted. It would have been an outrage upon justice and decency for Hampton to have acted as sheriff during the trial of appellant. Section 828, code 1892, provides for the appointment of the coroner to act as sheriff in a case like the one at bar.

The venire was summoned by special bailiffs appointed by the sheriff. The testimony of the sheriff shows that he appointed them; that they were good and true men, and that they discharged their duties faithfully.

The statute, code of 1892, § 933, first appeared in the code of 1880, and was enacted to remedy a great evil which existed in the administration of the law in this state. It applies alike in civil and criminal cases, and was not enacted by the legislature, as supposed by some, solely to prevent a miscarriage of justice in criminal cases when a defendant had been placed in jeopardy. It was the manifest purpose of the legislature in passing this statute to compel a speedy determination of litigaation, and to avoid unnecessary accumulations of costs and the saddling upon taxpayers of unnecessary burdens. If the construction placed on this statute by appellant's attorneys be the true one, then this case could never have been tried in Kemper county. They succeeded in delaying a trial for about ten days, and if it had not been clear to them that a jury could not be impaneled within the remaining days of the regular term of the court, they could have easily delayed the trial for another ten days. There are some counties where the regular term of the circuit court continues for one week only, and it is certain that the appellant could not be tried in one of these counties, no matter how atrocious his crime, if he must be placed in jeopardy before the court would have the power to continue the term under the statute. All motions and applications had

been overruled, and the work of impaneling a jury had been entered upon, and the trial or hearing of the case had commenced within the meaning of the statute, and in this case was in progress when the last day of the regular term of the court expired. In our opinion, there can be no question but what this is the true meaning and spirit of the statute. *Whiten* v. *State*, 61 Miss., 717; *Smith & Gavin* v. *State*, 61 Miss., 754; *Walker* v. *State*, 102 Ind., 502; *Wayne P. Co.* v. *Hammons*, 129 Ind., 368.

*John R. Dinsmore*, on the same side.

A new trial will not be granted where erroneous instructions have been given, if the verdict is clearly right according to the evidence. *Garrard* v. *State*. 50 Miss., 148; *Pritchard* v. *Myers*, 11 S. & M., 169; *Hand* v. *Grant*, 5 S. & M., 508; *Bowers' case*, 11 Leigh, 777; *Railroad Co.* v. *Cathey*, 70 Miss., 339.

The supreme court will not set aside a verdict of a jury if it appear that on another trial a different verdict will not ensue and it is manifest that justice has been done. *Garrard* v. *State*, 50 Miss., 148. The supreme court, in refusing to reverse a case has used such language as this: "We cannot say that the verdict is manifestly wrong." Whitfield, J., in *Peabody* v. *State*, 72 Miss., 107. "The verdict in this case being manifestly right, we will not reverse it." *Duff* v. *Snyder*, 54 Miss., 245. This court has repeatedly refused to reverse in cases when another trial, properly conducted, on the same evidence, would result in the same verdict. *Barnett* v. *Dalton*, 69 Miss., 617; *Garrard* v. *State*, 50 Miss., 148; *Magee* v. *Harrington*, 13 Smed. & M., 406; *Brantley* v. *Carter*, 26 Miss., 282; *Hanna* v. *Rentfrow*, 32 Miss., 131; *Fore* v. *Williams*, 35 Miss., 540; *Wesley* v. *State*, 37 Miss., 351; *Cameron* v. *Watson*, 40 Miss., 209; *Hanks* v. *Neal*, 44 Miss., 227; *Head* v. *State*, 44 Miss., 752; *Evans* v. *State*, 44 Miss., 775. If the error be immaterial and justice has been done, the court will not set aside the

verdict, nor enter into the discussion of the questions of law. Wharton's American Criminal Law, Sec. 88.

Where there is competent evidence sufficient to support the finding, the judgment will not be reversed for an error in admitting testimony. *O'Leary* v. *Burns*, 53 Miss., 171. Where substantial justice has been done and a correct result reached the judgment should stand, as shown by the opinion and other authorities cited by Judge Whitfield in the case of *Lipscomb* v. *State*, 75 Miss., 610–617. We submit that in this case the court will not reverse unless it is driven to such action by stern necessity. The law is, ordinarily, that no more than two new trials shall be granted to the same party in any case. Code of 1892, § 738.

This being the general policy of the state, the court will, on a second appeal, affirm the case, if possible; because, in so doing, it is not only carrying out the policy of the legislature, that is supposed to echo the voice and will of the people, but also, in this way, is carrying out the reasonable presumption, strengthened by the result of the second trial, that another trial will only result in another verdict of condemnation. We also insist that the evidence in this case, now before the court, is stronger than it was on the other appeal. New facts have been developed, stronger proof has been introduced. Like all cases, especially of murder, time has only strengthened the chain of evidence against appellant. The facts and circumstances are stronger now than ever before. "Murder will out."

The continuance was properly disallowed by the lower court. The rule of law is: Applications for a continuance are always addressed to the sound discretion of the trial court, and it is only where this discretion has been manifestly abused that the action of the court can be assigned for error. *Ogle* v. *State*, 33 Miss., 383.

Appellant contends that the judge had no power to order the court to stand open, under § 933, until the trial of the case was finished, as the case stood, when the term expired, generally,

by operation of law.   It was very pertinently asked from the bench of counsel during the argument: " When do you consider that a trial has commenced ?"   The question seemed at first to stagger counsel, and well it might.   The only reply was that he supposed it was when a party was in jeopardy.   The statute uses the words, " has been commenced, and is in progress," etc.   " Commence ". means to begin, to do the first act in anything, to enter upon, etc.   " Progress " means the act of proceeding, or going forward; motion or movement onward; advancement; to move forward; to go on; to go forward.   It must be admitted the legislature used the words " has been commenced " and " and is in progress " in their common, usual and ordinary sense; in their generally accepted sense.   If the legislature had designed to frame a statute to cover this very case, better language could not have been used.

Argued orally by *J. H. Neville, J. H. Currie* and *W. R. Harper*, for appellant; by *John R. Dinsmore, R. F. Cochran* and *Wiley N. Nash*, attorney-general, for the state.

R. H. THOMPSON, Special J., delivered the opinion of the court.

W. H. Lipscomb, a practicing physician, was indicted jointly with one Guy Jack, by the grand jury of Kemper county for the murder by poisoning of Charles T. Stewart, a patient of the accused.   A severance was had and appellant was tried at the March term, 1897, of the circuit court of said county, and convicted of the crime.   From this conviction he appealed to this court, and, on the nineteenth day of February, 1898, the judgment and sentence of death, passed upon him by the court below, was reversed and vacated and a new trial granted.   The case on the former appeal is reported: *Lipscomb* v. *State*, 75 Miss., 559.   The judgment of this tribunal reversing the first conviction was rendered by a divided court, two members favoring a reversal, not because there was a want of

sufficient evidence to support the verdict, but because of errors committed by the circuit court in its action on instructions; the other member of the court favored an affirmance of the judgment then appealed from and of the death sentence, notwithstanding such errors, on the ground that appellant was so manifestly guilty, from the evidence, of having murdered the deceased by the administration of poison as to render the errors nonreversible ones.

On the first appeal the principal question discussed was that of the admissibility of the dying declaration of the deceased, which declaration was in these words: "He [meaning the declarant] said that he had been dead and that he was going to die, and the good Lord had sent him back to tell me [the witness] that Dr. Lipscomb had poisoned him with a capsule he gave him that night, and Guy Jack had his life insured and had hired Dr. Lipscomb to kill him."

One of the judges who heard the cause was of the opinion that the entire declaration was incompetent; two of them that parts thereof were competent, and since the only objection to its admission in evidence on the trial then under review was a general one, that the trial court did not err in allowing the declaration to be given in evidence to the jury. As the case was to be reversed and a new trial awarded, the two judges who concurred in the opinion that parts of the dying declaration were admissible, thought proper to indicate in their opinions which parts were so admissible over specific objections of the accused, if made, and which parts should be excluded upon like objections.

After the case was remanded it again came on to be heard in the court below, at its March term, 1898. The accused, appellant, made an application—the first one—for a continuance of the case, averring as cause why the same should be granted, that his physical condition was such that he was unable to undergo a trial at the then present term of the court. In support of this application, the accused and his attendant physician were

introduced as witnesses before the court, and testified relative to the subject-matter of the application.   At the conclusion of this evidence, the court below, not being satisfied upon the question then at issue, caused seven practicing physicians to examine the person of the defendant, and directed them to make, on oath to the court in writing, a report of his physical condition.   This was done, five of the seven physicians reporting that the accused was able to stand his trial, and two that, in their judgment, he was unable to do so.   The court thereupon overruled the application for a continuance.   This was on March 10, 1898, and a special venire was then drawn, and the case was set for trial on the fifteenth of that month.

On the morning of the fifteenth the appellant renewed his application for a continuance, or rather made a second one, supporting the same by his affidavit, in which he averred that because of his physical and mental condition he was unable to endure the ordeal of a trial, or to properly conduct or advise his attorneys concerning his defense, and that his infirmities had grown materially worse since his first application for a continuance had been denied.   The court below was not satisfied upon the matters of fact thus presented, and caused twelve practicing physician to be subpœnaed to appear before the court, and eleven of them so appeared.   The court gave directions to these physicians to examine the accused and report the court in writing:

1. Whether the physical condition of the accused enabled him to endure the strain that would necessarily be upon him during the progress of a trial.

2. Whether the mental condition of the accused enabled him to intelligently note and pay that attention to the development of the testimony that would be needful to the administration of justice.

3. Whether the physical and mental condition of the accused enabled him intelligently to testify, if he desired to do so, in his own behalf.

Nine of these physicians, after making the examination of the accused, reported on oath to the court, in writing, to the effect that the defendant was physically able to endure a trial and mentally able to advise his attorneys and conduct his defense, and to testify in his own behalf.    Two of the eleven dissented, and reported that Lipscomb was physically unable to undergo a trial, and mentally unfit to intelligently give his evidence or to protect his interest should a trial then be had. The court, upon receipt of the reports of the physicians, overruled the application—the second one—for a continuance.

The district attorney, in behalf of the state, then moved the court to displace the sheriff of the county, because, as was averred in support of this motion, that officer was interested in the case and an active partisan of the accused, and the motion further asked the court to make an order requiring the coroner of the county to execute, do and perform all of the duties which appertain to the office of sheriff in the particular case being tried.    This motion was based upon § 828, code of 1892, which section is in words following: "If, for any cause, there be a vacancy in the office of sheriff, and no deputy to act as authorized by law in case of the death of the sheriff, or the sheriff be a party or interested in any suit, or, for other cause, be incapable or unfit to execute his office in any particular case, the coroner of the county shall, during the vacancy, or in the cases wherein the sheriff is disqualified or unfit to act, execute, do and perform all the duties which appertain to the office of sheriff.    And in every case where, by vacancy or exception to the sheriff, any writ shall be delivered to the coroner to execute, he shall do and perform all things by virtue of such writ which ought to be done therewith and thereunder; and, in case of any neglect or breach of his duty, such coroner shall be subject to the same penalties and damages and to the same proceedings as sheriffs are subject to in like cases.    But the coroner shall not execute the office of tax collector."

Evidence was taken upon the matter of fact so presented, at the conclusion of which the court sustained the motion.

The cause then came on to be heard on the motion of defendant to quash the special *venire facias.* The grounds upon which this motion was based grew out of the following facts: When the special venire was drawn the trial court directed the sheriff to prepare a list of bailiffs or deputies whom he desired to act in serving the venire, and to present the same to the court, so that their names might be submitted to the attorneys for the state and the defense, with the view of enabling the attorneys to make objection to the competency or fitness of the persons named on the list to perform the contemplated service. The sheriff accordingly made out such list and rendered the same to the trial court, and . the court submitted the list to the attorneys for the prosecution and for the defense. The attorneys for the defense refused to receive the list or to make any suggestions concerning the persons whose names appeared thereon; the attorneys representing the state made objection to two of the men named. The sheriff thereupon selected two other persons in place of those to whom objection had been made, and these two persons, together with those on the original list to whom objection had not been made, were by the sheriff appointed to execute the venire, and they did execute it, each going to a different part of the county to summon the jurors. · The court below overruled the motion to quash the venire, and proceeded to impanel a jury for the trial of the accused.

Six jurors had been examined by the court and adjudged *prima facie* competent, and had taken their seats in the jury box, but none of them had been accepted by the state or presented to or passed upon by the defendant, when the hour of 6:45 o'clock arrived in the afternoon of the last day of the March term, 1898, of the circuit court of the county, as fixed by the general statute providing the times of beginning and the duration of the terms of court in Kemper county. The special venire in the case and the regular jurors for the week had been exhausted, and the court, thereupon, basing its right

so to do upon the provisions of § 933, code of 1892, ordered the acting sheriff to summon additional jurors, and directed that such jurors should be present in court on the following Monday, March 21, 1898, to which day an adjournment was ordered.

The code section is in the following words: "When the trial of any case, civil or criminal, has been commenced and is in progress in any court, and the time for the expiration of the term, as prescribed by law, shall arrive, the court may proceed with such trial or hearing, and bring it to a conclusion in the same manner and with the like effect as if the stated term had not expired."

When the court met on Monday, and when it was about to proceed with the examination of jurors, the defendant moved the court to discontinue further proceedings in the cause, contending that the statute above quoted did not authorize further proceedings, and was not applicable to the cause as it then stood. On the hearing of the motion, the minutes of the court's proceedings on Saturday, March 19, were offered in evidence, from which it appeared that during that day the defendants in ten separate criminal cases, who had been convicted of crime, were brought before the court and duly sentenced; the last entry on the minutes of the court for that day, however, was one in the cause now under consideration, adjudging that the court stand adjourned until the following Monday (quoting from the entry) "to conclude the hearing of this cause commenced and in progress, notwithstanding the term of the court prescribed by the law had expired." The motion was overruled.

The examination of jurors was then proceeded with until a full jury was in the box and was presented to the accused. Thereupon the accused presented a special plea, setting up the matter above stated and made the basis of the motion just referred to, and the plea concluded with a prayer that no further cognizance be taken of the cause at that time. The state demurred to the plea and the court below sustained the demurrer.

Thereupon the jury was completed, and the introduction of

evidence entered upon. There were several exceptions to the rulings of the court on the admissibility of evidence, including the dying declaration, taken by the appellant. We will take notice of these rulings after disposing of the assignments of error predicated of the other rulings of the court before mentioned, to each of which the appellant duly excepted.

*The applications for a continuance.*—We find no reversible error in the rulings of the court below denying the applications for a continuance. Of necessity such applications, based upon the physical or mental condition of the party indicted for crime, must, even more largely than ordinary applications for the postponement of trials, rest in the discretion of the trial judge; he has the person of the accused before him, and the very appearance of the party may be considered by him in reaching a just conclusion. Were this otherwise the guilty would be afforded opportunity to defeat a trial by feigning sickness. Witnesses who are not experts, called to contradict such pretenses, could swear to nothing save their conclusions from such appearances, and the judge can draw conclusions therefrom as well as such witnesses. Nor will it avail anything in the interest of justice to say that because an accused person produces some medical practitioner who will join him in swearing that the indicted party is physically incapable of enduring the ordeal of a trial, or mentally incapacitated to properly conduct, or aid his attorneys in conducting, his defense, that it follows of course a continuance must be granted. The trial judges are presumed to be honest, impartial and capable officials, and they should be permitted to exercise that discretion in such matters with which the law invests them, and a conviction for crime ought not to be reversed for the reason under consideration unless the case be indeed an extreme abuse of discretion; and such abuse must be apparent from the entire record of the conviction looking at the whole trial and its results as a completed one.

While we are not prepared to give judicial sanction to every-

thing that was done by the learned judge of the court below, in order to satisfy his mind of the real truth concerning the appellant's mental and physical condition before denying the applications for a continuance, yet we do not hesitate to adjudge, looking at this record as a whole, viewing the proceedings in the court below from the standpoint of a concluded trial, that sound judicial discretion is not shown to have been abused, and that it is manifest that the judge below honestly and impartially endeavored to adjudge in accordance with the very truth.

We do not think the fact that the judge received the sworn report of the physicians appointed to examine appellant constitutes reversible error; it would be perhaps better practice in such cases as this for the representative of the state, if he suspect the accused of feigned illness or temporary mental weakness for the purpose of securing a continuance, to obtain the attendance of impartial physicians as expert witnesses and demand of the accused that he submit to an examination of his person in the presence of the court, and allow such witnesses to be subjected to a cross-examination by the accused and his counsel. If such demand should be refused and the accused object to such procedure, the refusal itself would be evidence tending to discredit the facts upon which the application for a continuance was based, and, where the court was in doubt, would, we think, ordinarily, justify a direction that the trial proceed. However this may be, we are of opinion that continuances of criminal causes based on the matters of fact averred in this case as grounds for allowance, are not to be placed solely in the power of defendants and their friends, even though those friends be physicians, with nothing to prevent the exercise of such power save the restraining influence of having to make oath to the matters of fact claimed by them. Nor do we think that the reception by the court below of the report of the physicians violated the constitutional right of the accused to be confronted by the witnesses against him. Such

right, guaranteed by section 26 of our present state constitution, primarily relates to the trial of the guilt or innocence of the accused.    But even if we concede that the court, because of the right embodied in and guaranteed by the constitution, erred in receiving the reports in this case, such error is not sufficient cause for reversing the conviction since, as we have already said, we are satisfied, from the record before us, excluding the reports of the physicians, that appellant's mental and physical condition were such as to deprive him of any right to a continuance because thereof.    This is manifest from the skillful manner in which his defense was conducted and the clearness, perspicuity and mental acuteness which characterize his own evidence delivered in his defense.

· *Displacing the sheriff.*—The next question for consideration is the action of the court below in displacing the sheriff, and directing that the coroner of the county, in all matters pertaining to this case, should perform the duties prescribed by law to be executed by the sheriff.    We have already quoted in this opinion, in connection with the statement of facts of the case, the section of the code (§ 828) under which the court below acted.    It was shown to the satisfaction of the trial judge, and the court below so adjudged, that the sheriff was interested in the result of this cause, and it cannot be seriously claimed here that the evidence was insufficient to justify the adjudication. We are of the opinion that the evidence did justify the court below in concluding that the ends of justice would most likely be promoted by having some other person than the sheriff to act in his official capacity in this case.    We think the provisions of § 828 of the code are wise, and that the circuit judges of the state should be allowed to exercise a liberal discretion in their enforcement.    The main purpose of all proceedings in the selection of juries, the care and control of them during the trial of a cause, and the prevention of improper influences being brought to bear upon them after they are impaneled, is to insure fair and impartial trials of causes, and honest verdicts,

based upon the real belief of the jurors as produced by the evidence legitimately and properly presented under the direction and control of the court. This main purpose of all trials cannot more efficiently be promoted than by the court seeing to it that the duties of the sheriff are not left to be performed by an interested. person or one for other cause incapable or unfit to execute such duties in the particular case being tried. Of course the power conferred by the statute is a delicate one, and should not be exercised capriciously or without due consideration of the facts in the particular case, and the rights of the officer should not be needlessly violated.

But the principal complaint is predicated of the fact, not that the sheriff was displaced, but that the court below directed the coroner to act, and did not order a deputy sheriff, against whom no personal disqualification was averred or shown, to perform the duties of sheriff during the trial. This contention, in our judgment, is based upon a misconclusion from the statute. The words found in the section, 828, code of 1892, "and no deputy to act as authorized by law in case of the death of the sheriff," have no other effect than to make the balance of the section applicable to the state of case provided for by another section of the code, § 3079. This last section is in the following words: "If any state or county officer shall die, having a deputy, the deputy may continue to discharge the duties of the office in the name of the deceased officer as if he had not died, until the vacancy in the office shall be filled according to law, and the official bond of the deceased officer and his estate shall be a security for the faithful performance of the duties of the office by the deputy, who shall be subject to all the provisions of law applicable to his principal in his lifetime; and the personal representative of the deceased shall have like remedy against the deputy as the decedent would have if living." The two sections must be construed together, and, so construing them, § 828 cannot be held to require the performance of

official duties by a deputy sheriff whose principal is living and disqualified.

But, again, if the appellant had a fair and impartial trial, what right has he to complain that the duties of a ministerial office pertaining thereto were performed by one person rather than another, if it appear, as it does in this case, that nothing prejudicial to him or his rights was done by the person who did in fact exercise the functions of the office? We think he has none, and we cannot find warrant, in any view of the case, for reversing the conviction appealed from because the court required the coroner, against whom no objection was averred, to act as sheriff during the trial.

*Motion to quash the special venire.*—We do not find anything of which appellant can rightfully complain in the facts upon which his motion to quash the special venire was based. It will be noted that the special venire was drawn and process issued for the jurors before the displacement of the sheriff. This process, therefore, was placed for execution in the hands of an officer who was shortly thereafter, upon an investigation of the truth of the matter, adjudged to be interested in the result of this case. It does not appear how the judge of the trial court, before the investigation just mentioned, became advised of the necessity or propriety of making special effort to prevent improper influences being brought to bear on those who had been drawn on the venire, but it must be remembered that the case had been tried once before. The judges of our circuit courts are men of intelligence and presumably have at least ordinary perceptive faculties, and necessarily, in the course of a trial, many things in the conduct of an officer of the court fall under the observation of the presiding judge from which he may naturally and properly draw conclusions in regard to the bias of an officer of the court or his unfitness to act in the particular case.

While we think wisdom requires judges to be circumspect in regard to the sources of information from which they draw con-

clusions, yet the law surely does not require that a judge, who is thoroughly convinced that the fountain of justice is being, or is likely to be, corrupted, shall quietly permit the same to be done, even if his convictions arise alone from personal observation of an officer's conduct. No state of affairs more harmful to a proper administration of the law can be conceived than that in which a presiding judge is deprived of a power so essential to the impartiality of judicial proceedings, as the supervision and control of the ministerial officers of his court. Certainly he would present a most pitiable and undignified figure if compelled to remain inactive while witnessing the efforts of partisan officials to defeat or impede the progress of justice. To quietly submit to such malversation would be an abdication of one of the highest and most important of judicial functions, and bring into contempt an office, the honor and prestige of which is one of the splendid heritages of the Anglo-Saxon race.

While we do not mean to impute to the sheriff of Kemper county anything not entirely worthy of his official position, yet we must, in this case, presume that in ordering the sheriff to submit to the court the names of his deputies, by whom the jurors were to be summoned, the judge did not act without reason. Whether his action was predicated of observation of the sheriff's conduct in the cause or sprang from an apprehension that partisan deputies might be selected because of the great interest manifested by the public, in either case we see nothing that was done by the learned judge who presided in the court below, which could wrong the appellant. What was done, however, demonstrates to our mind that the presiding judge was conscientiously endeavoring to secure a fair and impartial administration of justice.

The record does not raise the remotest suspicion that the submission to the court of the names of persons whom the sheriff had selected for appointment as deputies to summon the jurors, or the submission of them by the court to counsel, in the slightest degree prejudiced the accused; so doing was not

calculated to prejudice his rights, and the same can be said of the substitution by the sheriff of two unobjectionable persons in lieu of the two at first proposed, and to whom the attorneys for the state made objection. A speculation based upon the idea that the manner in which the sheriff appointed his deputies, who did execute the writ, might in some way have prejudicially affected the rights of the accused is too theoretical and attenuated to be made the basis for the conduct of the practical affairs of life, and such theories, if indulged, would be calculated to defeat the administration of the criminal law. Besides, the very terms of our statute—§ 2389, code of 1892—forbid that the judgment appealed from should be reversed because of the matter under consideration. It provides that "the provisions of law in relation to the . . . summoning . . . of juries are directory merely, and a jury . . . summoned . . . though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn."

*Prolongation of the term of the court.*—The court below, late in the afternoon of Saturday, the last day of the regular term of the circuit court of the county, as fixed by the general statute, acting under the provisions of § 933 code of 1892, already quoted, adjudged that the hearing of the cause had been commenced and could not be completed before the end of that day, and adjourned until the following Monday for the purpose of then completing the trial. It will be remembered that six jurors had been declared competent by the court and had taken their places in the jury box, although none of them had been accepted by the state, and of course they had not been presented to or accepted by the accused.

When the court met on Monday the accused, appellant, by a motion to discontinue proceedings, and afterwards by a special plea, raised the question whether the trial or hearing of the cause had been commenced and was in progress, within the meaning of § 933, code of 1892, at the stage of proceedings

reached when the court adjourned on Saturday. The court below decided adversely to appellant, and the question thus raised is now to be considered by us, and of course the consideration involves the construction of the statute. The states of Indiana and North Carolina have statutes substantially like our own now under consideration, but we have found no aid from the judicial decisions of those states construing their statutes more helpful in the solution of the question before us than our own decisions hereinafter cited.

At a very early day in the history of the English law it was resolved by the barons of the exchequer that, for the sure and true interpretation of statutes, four things are to be considered, and the learned of all succeeding ages have approved the wisdom of the resolution. These four things are (1) the old law, (2) the mischief, (3) the remedy, (4) the reason of the remedy.

It is sufficient to say of the old law that, before the adoption of the statute under consideration, the expiration of the term as fixed by the general statute, no matter what stage of proceedings had been reached in any cause, absolutely and of legal necessity, terminated the power of the court to proceed. The mischief sought to be remedied by the statute, the true interpretation of which we now seek, we think, was this: the old law left it within the power of a litigant who feared adverse judgment, by dilatory proceedings after a trial had been begun, to escape the consequences of such judgment being then rendered, and that too after the public had incurred, in many instances, practically all the expense that a completed trial would have imposed. The mischief sought to be remedied was not, as argued before us, that persons indicted for crime, and whose trials had been begun, so that jeopardy had attached, could escape all danger of ever being convicted by delaying the trial until the end of the court, because it was, under the old law, adjudged that the expiration of the term necessitated a discharge of the jury, and, under such a state of facts, an accused could not claim protection from another trial under the

constitutional provision that no person's life or liberty should be twice placed in jeopardy for the same offense. *State* v. *Moor*, Walker (Miss.), 134; *Price* v. *State*, 36 Miss., 531; *Josephine* v. *State*, 39 Miss., 613.

It was also urged in the arguments in behalf of appellant that the hearing or trial of a cause, within the meaning of the statute, could never be considered as having been commenced in a criminal cause until the accused was placed in jeopardy, under the authorities construing the constitutional provision as it existed in this state at the first adoption of the statute in 1880; in fact, it was argued that the beginning of a trial and the attaching of jeopardy were coincident; and it was, further, contended that the impaneling of a jury was a proceeding the object of which was to select the triers of the accused, and that a hearing or trial of a cause could not, in the nature of things, be begun until the triers had been selected and something thereafter done, some step taken, before such triers, in the nature of a direct investigation of the issue presented by the pleadings. These arguments are not without force, and we have given them due and careful consideration. We find, under the better authorities, that the point of time at which jeopardy was determined to have attached was when a jury had been impaneled and sworn to try the accused upon the criminal charge. Jeopardy, therefore, attached before, but ordinarily immediately preceding, the taking of any step in the nature of a direct investigation into the truth of the charge. If, therefore, we accept the instant of time at which jeopardy attached as being the point in procedure when the hearing or trial is to be regarded as begun, we fix a time before, though ordinarily immediately before, any step is taken in the nature of a direct investigation of the truth of the charge, and such a conclusion is confronted with the apparently logical objection that, at such point in the proceedings, nothing had been done except to get ready to enter upon the hearing or trial. And yet, under the logic of previous adjudications of this court, if not the decisions

themselves, construing the statute, the correctness of which we do not doubt, we are bound to hold that a hearing or trial of a criminal cause is begun at some point not later in the procedure than that at which jeopardy is held to attach; and we must hold, therefore, that the hearing or trial commences before any step is taken in a direct inquiry into the truth of the charge. We do not doubt but that, under the decisions of this court above referred to, were our constitutional provision on the subject of jeopardy the same as in 1880, when the statute was first adopted, the discharge of a jury impaneled and sworn to try an accused upon a criminal charge, at or immediately preceding midnight of the last day of the term of the court, as fixed by the general statute, instantly upon swearing the jury and before any other step whatever was taken, would just as effectually entitle the accused to a discharge as the defendants were entitled to be discharged in the cases of *Whitten* v. *State*, 61 Miss., 717, and (if his plea were true) *Helm* v. *State*, 66 Miss., 537.

The question then presents itself, if we are to fix upon a time in procedure anterior to any step in the direct investigation of the question of fact presented by the pleadings, does the language of the statute " when the trial or hearing of any cause, civil or criminal, has been commenced, and is in progress,'' require us or justify us in fixing upon the point in procedure immediately preceding such a direct investigation? Did the legislature so intend? It must be presumed, unless the terms of the statute forbid, that the legislative remedy for the mischief was intended to be efficient. Unless the very words of the statute require it, we would not be justified in concluding that the legislature intended to relieve the public treasuries from the unnecessary burdens imposed by abortive trials, when the failure to complete them was caused by the expiration of the term of the court under the general statute, and yet so confine and narrow the relief as to leave a large proportion of such burdens still to be borne by the taxpayers. No reason

can be given why the statute ought not to be broad enough to authorize the continuance of a hearing or trial, where, as in this case, a large number of jurors have been summoned, and much time has been spent in an effort to impanel a jury, as well as one in which a jury has been impaneled and sworn. Extreme cases not only test principles but their consideration is sometimes useful to guide the mind in reaching correct conclusions concerning statutes. Suppose that appellant's crime were so heinous as to have attracted the attention of the entire people of the county, and let us suppose that on the first day of the term of the court at which his case was called for trial the impaneling of a jury was entered upon, and that, after continuous efforts to get a jury, only eleven jurors had been accepted when midnight of the last day of the term, as provided by the general statute, arrived, would not the case be within the mischief sought to be remedied by the section of the code under consideration, and should the enormity of the crime be permitted to aid the criminal's efforts to escape punishment by rendering it impracticable to impanel a jury within the time prescribed for the duration of the term of court by the general statute? We cannot think that the legislature, while endeavoring to remedy the evils arising from abortive trials, intended that such a case as we have supposed should, by reason of its enormity, be without the scope of the remedial statute. If such a case be within the statute, then the case actually before us is not without the purpose and intent of its provisions. Do the terms of the statute exclude the case supposed, or the actual case before us, from its operation? It cannot be denied, without doing violence to the plain language of the statute, that the words "trial" and "hearing," as used in the section, relate alike to civil cases and to criminal cases. We think the statute was enacted by the legislature without reference to the technical beginnings of trials as affected by the question of jeopardy. The use of the terms "trial or hearing" proves that something more than—something in addition to—technical beginnings of

trials, as construed by the courts in dealing with the constitutional provision on the subject of jeopardy, was in the legislative mind, otherwise the words "or hearing" can be given no force or meaning whatever. There is no just or proper analogy or connection between the statute and the subject of jeopardy.

The code itself furnishes a statutory rule for construing its provisions, which must not be overlooked, and it is in these words: "All words and phrases contained in the statutes are used according to their ordinary and common acceptation and meaning, but technical words and phrases according to their technical meaning." Code of 1892, § 1522.

The words "hearing" and "trial" in the statute under consideration are not technical, we think, as there used; we must therefore construe them according to their ordinary and common acceptation and meaning. The best thought that we are enabled to give to the question has led us to conclude that a trial is commenced, within the meaning of the statute, construing its terms according to the ordinary and common acceptation and meaning, when all dilatory proceedings have been disposed of, and when all ordinary efforts, the object of which is to prevent a trial, have been ineffectually exhausted, and the cause is called for trial, and nothing remains to be done except to proceed therein. We conclude, therefore, that the court below did not err in overruling the motion of appellant, made on Monday morning, to discontinue proceedings, nor did it err in sustaining the demurrer of the state to appellant's special plea.

The case of *State* v. *Pancoast*, 5 N. Dak., 514, s.c. 35 L. R. A., 518, cited by counsel, in so far as concerns any question properly before that court, is not in conflict with our conclusion, although some expressions of the North Dakota court are seemingly adverse to our judgment; but even these expressions are tentative and are limited to the meaning of the words, "at any time before the trial is begun," as used in a statute of that state on the subject of a change of venue. Like our-

selves, the court was endeavoring to ascertain the meaning of words, not generally, but as used in a particular statute.

That we may not be misunderstood, we add that, in our opinion, the mere summoning of a special venire, even after the overruling of an application for a continuance in a criminal case, would not be the commencement of a hearing or trial of a cause within the meaning of the law, because such a case would not be within the ordinary acceptation and meaning of the terms used in the statute; but the hearing or trial of a cause is commenced, within the meaning of the statute, just as soon as, but not before, the court enters upon the impaneling of a jury for the trial of the matters of fact presented by the pleadings. This construction, we think, is the true interpretation of the statute. It neither enlarges its scope beyond legislative intent nor unduly narrows the meaning of its terms.

*Rulings on evidence.*—We have carefully considered each of the assignments of error bringing in review the several rulings of the court in the admission or rejection of evidence during the trial to which the appellant objected and excepted, and do not find reversible error in any of them. We deem it necessary to mention only a part of these rulings, the objections to those not adverted to being, in our opinion, wholly without merit.

After the first trial of the accused, and before the one now under review, a material state's witness died. Upon the last trial the state was permitted to prove what the deceased witness had testified on the former trial, after ample preliminary proof of his death, identity, etc. This was not error. While the exact question here presented was not then before the court, the correct rule on the subject was announced in *Owens* v. *State*, 63 Miss., 450.

Two of us think the court below did not err in its rulings on the dying declaration. We all concur that it did not commit reversible error, because the appellant himself introduced the entire declaration. The circuit court conformed exactly to the

views of a majority of the members of this court, as announced in their opinions delivered on the former appeal in this cause. The members of the court remain of the same opinion, touching the dying declaration, as held by them when the case was first before us. In the last trial specific objection was made to each part of the declaration, and, as we have just said, the court below ruled on such objections in conformity to the views of a majority of the members of this court.

After such rulings, most likely upon the idea that the excluded parts of the declaration characterized and mollified the effect of the parts which were held to be admissible, the appellant himself offered in evidence, and was permitted to prove, the entire dying declaration. This court did not decide, when the case was first before us, that this was improper; in fact, a majority held that, under a general objection by appellant, the court did not err in admitting the entire declaration.

Shortly after the death of Stewart, a witness, Dr. Mohler, informed appellant of the death, and of the fact that the wife of the deceased had accused appellant of murdering her husband. Upon the trial, this witness was asked by the attorney for the state: "What was the accusation made by Mrs. Stewart as to who killed her husband, which you afterwards imparted to Dr. Lipscomb? What was the accusation?" To this appellant objected, and the court overruled his objection, and the question was answered by the witness. We, however, find ourselves relieved from the necessity of deciding the question thus presented, because the record discloses that the appellant himself afterwards testified to the very matters of fact to which Mohler was permitted to testify.

*Instructions.*—The court below did not err in granting the instructions given for the state, or in refusing those asked by the defense, to which our attention is called by the assignments of error.

*The juror, Davis.*—The only remaining question for our consideration arises from the evidence offered on the motion for a

new trial touching the qualifications of the juror, Davis. The juror was unquestionably competent, according to the facts developed by his *voir dire* examination, and he was accepted by the parties. After the verdict, the accused made affidavit that he had been informed, since the rendition of the verdict, of certain facts which rendered the juror not only incompetent, but actually hostile to the appellant when he entered the jury box. It is to be noticed that while the appellant's affidavit avers that the matters of fact were unknown to his counsel, yet one of the counsel made an affidavit to maintain a different ground of the motion for a new trial, and did not make oath that he was personally unaware of the facts averred by his client concerning the juror at the time he was accepted as such. This circumstance is not without weight in a case like this, where, after verdict, the integrity and competency of a juror is in issue, and the evidence on such issue is conflicting. The testimony of one man that another is without knowledge of a fact concerning a third, if not in its nature hearsay, is at least akin to it, and is weak and inconclusive evidence.

The authorities require that the accused and his counsel shall both have been ignorant, at the time of his acceptance, of the facts which render a juror incompetent, in order that the verdict be vacated because thereof, and it has been decided by this court that the affidavit of both defendant and the counsel to such want of knowledge is necessary. *Brown* v. *State*, 60 Miss., 447. But, aside from this, the great weight, if not the entire current, of authority is to the effect that the finding of the court of original jurisdiction on the question we are now considering, denying a new trial, will not be disturbed where the evidence touching the competency and integrity of a juror is conflicting. We think that the weight of the evidence in this case established the integrity and competency of Davis, and that the court below properly and correctly denied the motion for a new trial.

*Judgment affirmed.*