## In re STEVENSON.

(At Chambers, in St. Louis, Mo. November 4, 1903.)

1. COURTS—SPECIAL SESSIONS—INFORMALITY IN CALLING.

Where a judge who had power to fix terms of court, and to hold special sessions at such times as he might deem expedient, having fixed regular terms and the limit of their duration, at the close of one of such terms, instead of adjourning court sine die adjourned to the next secular day, his action was equivalent to the convening of a special session to commence on that day, and the court had the same power to transact business thereat as though a formal order had been entered calling such session in the absence of any statutory provision requiring such order.

2. SAME—ADDITIONAL JUDGE FOR INDIAN TERRITORY—POWERS.

The additional judge for the Indian Territory appointed under Act June 7, 1897, c. 3 (30 Stat. 62), which provides that he shall hold court at such places as shall be designated by the appellate court, and "shall have all authority, exercise all powers, perform like duties and receive the same salary as other judges of said courts," when holding a term of court under assignment from the appellate court has the same power to call and hold a special session after the close of the regular term, to dispose of unfinished business, as the judge of the district would have.

3. SAME—LEGALITY OF SPECIAL SESSION—SIMULTANEOUS HOLDING OF REGULAR AND SPECIAL TERMS.

A special term of court may lawfully be held while a regular term is in session at another place in the same district, where there are two judges each having authority to hold court in such district.

At Chambers. On application for writ of habeas corpus.

S. C. Price, for petitioner.

James E. Humphrey, Asst. U. S. Atty., for the Indian Territory.

D. P. Dyer, U. S. Atty., for respondent.

THAYER, Circuit Judge. The above-named petitioner made application to me, at chambers, for a writ of habeas corpus to secure his release from the United States penitentiary at Ft. Leavenworth, Kan., where he is now serving out a term of imprisonment which was imposed upon him May 13, 1901, by the United States court for the Southern District of the Indian Territory, sitting at Pauls Valley, in said district. He appears to have been convicted upon his plea of guilty of the offense of selling liquor within the Indian Territory, and was sentenced to two years and six months' imprisonment in the United States penitentiary at Ft. Leavenworth, Kan., and to pay a fine of $250. In his petition for the writ he alleged that he was unlawfully restrained of his liberty by the warden of the penitentiary for the following reasons: That is to say, for the reason that the term of court at Pauls Valley, as fixed by law and the order of court, had expired before the petitioner was brought to the bar of the court and required to plead to the indictment or was sentenced, and that the judge of said court, Honorable John R. Thomas, had no authority of law for holding said court, either at the time the petitioner pleaded guilty to the indictment or at the time he was sentenced. His contention is that, as the term of court at Pauls Valley had ended at the

¶ 3. See Courts, vol. 13, Cent. Dig. § 245.

time of his conviction, the sentence, when imposed, was, and ever since has been, utterly void, and that he is entitled to his discharge by the writ of habeas corpus.

The facts upon which this contention is based are not denied, but upon hearing before me were fully admitted, and are as follows: The United States court in the Indian Territory was created on March 1, 1889, with one judge (Act March 1, 1889, c. 333, 25 Stat. 783). The seventh section of that act provided that two terms of court should be held each year at Muskogee, in said territory, on the first Monday in April and September, "and such special sessions as may be necessary for the dispatch of the business in said court at such times as the judge may deem expedient; and he may adjourn said special sessions to any other time previous to a regular term." By an act of Congress approved May 2, 1890 (26 Stat. 81, c. 182), and by the thirtieth section thereof, the Indian Territory was divided into three divisions, to be known as the first, second, and third. By the same act the United States court for the First Division was directed to be held at Muskogee, for the Second Division at South McAlester, and for the Third Division at Ardmore. The clerk of the court was required to appoint a deputy for each division in which the clerk did not himself reside, at the places in such division where the terms of court were to be held. The same section of the act further required the judge of said court to "hold at least two terms of said court each year in each of the divisions aforesaid, at such regular times as said judge shall fix and determine." By another act of Congress approved on March 1, 1895 (28 Stat. 693, c. 145), the Indian Territory was divided into three judicial districts instead of three divisions, which were to be known "as the Northern, Central, and Southern Districts," in which districts "at least two terms of the United States court in the Indian Territory" were required to be held each year at each place of holding court in each district, "at such regular times as the judge for such district shall fix and determine." This act provided that the Southern Judicial District should consist of all the Chickasaw country, "and the places of holding courts in said district shall be at Ardmore, Purcelle, Pauls Valley, Ryan, and Chickasha." The act further provided for the appointment of two additional judges of the United States court in the Indian Territory, one of whom should be the judge of the Northern District, the other the judge of the Southern District, and that the judge of the United States court in the Indian Territory then in office should, from and after the appointment of the other two judges, be the judge of the Central District, and that said judges should reside in the judicial districts for which they were appointed. The act further declared that "the judges shall have within the judicial districts for which they are appointed, all such authority both in term time and vacation, as to all matters and causes, both criminal and civil, pending or that may be brought in said districts and shall have the same superintending control over commissioners' courts therein and the same authority in the judicial districts to issue writs of habeas corpus," etc., "as is now by law vested in the judge of the United States court in the Indian Territory or in the Circuit and District Courts of the United States." The eleventh section of said

act created a Court of Appeals in the Indian Territory composed of *nisi prius* judges, to be presided over by the judge oldest in commission as Chief Justice of said court. By an act of Congress approved on June 7, 1897 (see 30 Stat. 62, 84, c. 3), provision was made for the appointment of one additional judge for the Indian Territory, and the act declared that "the appellate court of said territory shall designate the places in the several judicial districts therein at which and the times when such judge shall hold court; and courts shall be held at the places now provided by law and at the town of Wagner and at such other places as shall be designated by said appellate court; and said judge shall be a member of the appellate court and shall have all authority, exercise all powers, perform like duties and receive the same salary as other judges of said courts and shall serve for a term of four years from the date of appointment." In pursuance of this latter act, Hon. John R. Thomas was appointed as such additional judge on July 1, 1897. Judge Thomas appears to have been the judge who held the court at Pauls Valley when the petitioner was convicted and sentenced.

On January 20, 1900, an order was made by the United States court in the Indian Territory for the Southern District by Judge Townsend, judge of that district, fixing the terms of the United States court for the Southern District of the Indian Territory, and by that order it was directed that terms of court should thereafter be begun and held "at Pauls Valley on the eighth Monday after the first Tuesday in October and the second Monday after the first Tuesday in April, and each term may continue in session three weeks."

After the appointment of the Hon. John R. Thomas in the manner and form aforesaid, to wit, on April 4, 1901, the United States Court of Appeals for the Indian Territory made the following order: "That the Honorable John R. Thomas, additional judge of the United States court for the Indian Territory, shall, until otherwise ordered by this court, hold court in the Northern Judicial District of the Indian Territory at the places therein provided by law, at the times fixed therein by the judge of the Northern District, in pursuance of law, and in addition thereto said additional judge may hold court at Pauls Valley, in the Southern Judicial District of the Indian Territory, at a term of the United States District Court to begin on the 15th day of April, 1901." In pursuance of this order, Judge Thomas appeared at Pauls Valley on April 15, 1901, being the second Monday after the first Tuesday in April, and opened a term of court. At the expiration of three weeks, to wit, on Saturday, May 4, 1901, the court did not adjourn sine die, but arose until the following Monday morning, May 6th, and on that day resumed its session pursuant to adjournment on the previous Saturday. Thereafter, on May 7, 1901, the petitioner was arraigned and pleaded guilty to the indictment, and on the succeeding 13th day of May, 1901, the court having continued its session without interruption until that day, he was sentenced in the manner and form aforesaid.

It was also conceded that the United States court for the Southern District of the Indian Territory was convened at Ardmore in regular session on Monday May 6, 1901, the term at that place being

held by Judge Townsend while Judge Thomas was still engaged in holding a session of the court at Pauls Valley. The court was in session at Ardmore, as it seems, on Monday, May 13, 1901, when the petitioner was sentenced, and it did not adjourn at that place until July 3, 1901.

Counsel for the petitioner invoke the doctrine, which is supported by much authority, that where the length of a term of court is prescribed by statute all acts done by the court after the prescribed period has elapsed are coram non judice and void. Garlick v. Dunn, 42 Ala. 404; Wightman v. Karsner, 20 Ala. 446; White v. Riggs, 27 Me. 114; Archer v. Ross, 3 Ill. 303; Davis v. Fish, 1 G. Green, 406, 413, 48 Am. Dec. 387. See, also, Lipscomb v. State, 76 Miss. 223, 249, 25 South. 158; Horton & Heil v. Miller, 38 Pa. 270. And counsel urge that the same doctrine obtains where judges are empowered to fix the times and places for holding terms of court, and an order has been made in pursuance of such authority, fixing the time for holding a given court and the length of that term. They urge that such an order, when made, has the force and effect of a legislative enactment; citing 21 Enc. of Pl. & Pr. p. 612. The argument in opposition to the above contention resolves itself into three propositions: First, that Judge Thomas, having been duly assigned to hold the court at Pauls Valley on April 15, 1901, by order of the United States Court of Appeals made on April 4, 1901, had the right to continue the session at that place until the pending business of the court was disposed of, or, in other words, that it was a term created by the appellate court; second, that Judge Thomas was vested by law with all the powers of any other of the judges in the Indian Territory; that while assigned to duty in the Southern District of the Indian Territory he had the same powers as Judge Townsend, the regular judge of that district, and that among these was the power to call and hold a special session, and that the order adjourning court on Saturday, May 4, 1901, to Monday, May 6, 1901, was tantamount to ordering a special term to begin on the latter day; and, third, that the court so held was, in any event, a court de facto, and that, as the petitioner went to trial at such term without challenging the right of the court to sit and try him, the sentence imposed was, at most, simply erroneous, and not void, and that it cannot be successfully challenged by habeas corpus.

The order of the Court of Appeals in the Indian Territory, which was made on April 4, 1901, assigning Judge Thomas to hold the court at Pauls Valley, cannot be construed fairly as creating a new term of court at that place, to be held by Judge Thomas irrespective of the existing order fixing terms of court at Pauls Valley. The order was manifestly made in view of the well-known fact that a term of court at that place had already been fixed by an order made by Judge Townsend on January 20, 1900, the intention being that Judge Thomas should hold that court as well as the courts in the Northern Judicial District at the times which had been theretofore fixed for the holding of courts in that district. There is nothing in the order in question which indicates that the judges of the Court of Appeals intended thereby to create new terms of court or to designate new

places for holding court, although the act of June 7, 1897 (30 Stat. 84), empowered them to do so if they thought proper. They simply undertook to designate the places in the Indian Territory where the additional judge should hold court, without altering any orders previously made as to the places where courts should be held and when terms of court should begin.

Conceding, therefore, as I feel disposed to do, that Judge Thomas was assigned to hold a term of court at Pauls Valley, the time for the commencement of which had been prescribed by an order previously made in the Northern District of the Indian Territory, does it follow that all acts done by him from and after May 4 or May 6, 1901, were void? It is too plain for controversy that after he commenced the term at Pauls Valley he had all the powers of Judge Townsend, the regular judge of the Southern District. The act of June 7, 1897, under which he was appointed, leaves no room for doubt on that point, because it provided that the additional judge "shall have all authority, exercise all powers, perform like duties and receive the same salary as other judges of said courts." 30 Stat. 84, c. 3. Whatever acts Judge Townsend could lawfully do and perform Judge Thomas could in like manner perform. Their powers and functions cannot be differentiated. It was within the power of Judge Townsend to hold "such special sessions as may be necessary for the dispatch of business * * * at such times as the judge may deem expedient," for the act of March 1, 1889, supra, conferred that power on the United States judge in the Indian Territory, and it was not taken away by any subsequent act, but was expressly continued and confirmed by the act of March 1, 1895 (28 Stat. 693, c. 145), and by the second paragraph of the second section of that act. Had Judge Townsend been holding court at Pauls Valley when the 4th day of May, 1901, arrived, and the business of the court was not concluded, he could have appointed a special term to begin on the following Monday, May 6, 1901, or he could have amended the order of January 20, 1900, making the term to continue for two weeks longer. That order having been made by the judge, and not being a legislative enactment, was subject to amendment at any time by the same authority that had made it. Judge Thomas had the same power. It is said, however, that on May 4, 1901, no formal order was made prolonging the term or appointing a special session, but that the court merely adjourned to the following Monday. Such action on the part of Judge Thomas was fully tantamount, in my judgment, to ordering a special session to begin the following Monday. The law looks at the substance of things, rather than the form, and, where a court possesses the power to appoint and hold a special term of court at a future day, it matters very little whether it adjourns to that day, as in the case in hand, or adjourns the term which it is holding sine die, and at the same moment appoints a special session for such future day. In either event, the same result is accomplished, and, if litigants in cases pending before it are given notice by the order of adjournment that the court will resume its sessions on a certain future day, it would seem that they are not prejudiced, and have no just ground to complain, although the court does not

make a formal order calling a special session. If the power to appoint and hold a special session resides in the judge, it would seem that the manner and form of its exercise is not of much importance, unless a statute requires the power to be exercised in some particular manner. United States v. The Little Charles, 26 Fed. Cas. 982, 1 Brock, 380; Mattingly v. Darwin, 23 Ill. 567.

Some stress has been laid, in argument, on the fact that a regular term of court convened at Ardmore on May 6, 1901, and that the assembly of the court there necessarily terminated the sessions of court at other places in the Southern District of the Indian Territory, particularly at Pauls Valley. This might have been the effect of the Ardmore session, if there had been but one judge in the district who was empowered to hold the courts in the district and whose presence was required at Ardmore. Archer v. Ross, 3 Ill. 303. But it is not perceived that any such difficulty is encountered, or that any such consequence ensues, when there are two judges in a district or circuit, each of whom is empowered to hold its courts. In that event it is not impossible to have two courts in session in different parts of the same district. Besides, the holding of two courts in different parts of the district, or at the same place in the district, when there are two or more judges having co-ordinate power, tends to the prompt dispatch of public business, and should be encouraged. The point made by counsel for the petitioner that the term at Pauls Valley ended when the term at Ardmore commenced is not well taken, and must be overruled. The idea that one judge must discontinue the trial of cases in one part of the district because another judge has opened a term of court elsewhere in the district rests upon no substantial foundation of reason or authority.

A number of cases have been cited by counsel for the respondent, notably Smurr v. State, 105 Ind. 133, 4 N. E. 445, in support of the proposition that although the term at Pauls Valley, after May 4, 1901, was held irregularly, still the court acted under color of authority, and its acts were not void, so that a writ of habeas corpus will not lie to obtain the petitioner's release. But, without entering upon an investigation or discussion of this point, it will suffice to say that for the reasons above indicated I am of opinion that the term at Pauls Valley was held by authority of law after May 4, 1901; that it was in fact a special term at that place which Judge Thomas was authorized to convene and did convene; and that the petitioner has no just cause to complain.

The writ of habeas corpus is accordingly discharged.