MARY RICH *v.* FRANK HALL.

May Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed October 1, 1935.

*Harold E. Whitney* and *A. L. J. Crispe* for the defendant.

*Collins M. Graves* and *Fenton, Wing & Morse* for the plaintiff.

THOMPSON, J.   This is an action of tort to recover for personal injuries suffered by the plaintiff in an automobile accident.   There was a trial by jury and a verdict and judgment for the plaintiff.

On July 4, 1934, the plaintiff suffered personal injuries while riding as a gratuitous guest in an Essex sedan operated by the defendant, when the Essex car and a Pontiac car collided, and which collision she alleged was caused by the gross negligence of the defendant in the operation of the Essex car.

The only question for review here is whether the trial court erred in denying the defendant's motion for a directed verdict, based upon the lack of evidence tending to show gross negligence as required by P. L. 5113.

Gross negligence has been defined by this Court in *Shaw, Admr.* v. *Moore,* 104 Vt. 529, 531, 162 Atl. 373, 86

A. L. R. 1139, and in *Dessereau* v. *Walker,* 105 Vt. 99, 101, 163 Atl. 632, and it is not necessary to repeat what is said therein, except to say that gross negligence is equivalent to the failure to exercise a slight degree of care.

At the time of the collision, and just prior thereto, the Essex car was traveling in a general northerly direction over the cement highway leading from Bennington to North Bennington. The collision occurred at a point between the two villages which is referred to in the evidence as "Percey's Corner." At this point, U. S. Route No. 7, which is a cement highway and the main highway leading from Manchester to Bennington, effects a junction from the southwest with the highway leading from Bennington to North Bennington. The collision occurred in the intersection of these highways.

The highway from Bennington to North Bennington is eighteen feet wide as it enters the intersection. It is straight as it approaches, enters, and passes through the intersection. Route No. 7 is twenty-one feet wide as it enters the intersection. It approaches the intersection on a slight curve. There was a heavy traffic on both highways. The day was clear and the visibility was good. The defendant was familiar with the road and he had traveled over it a great many times. As he approached the intersection he was traveling at a rate of speed of about thirty miles an hour.

The defendant changed his testimony some during the trial, but, viewing the evidence in the light most favorable to the plaintiff, as we must, the jury would have been justified in finding the following facts: As the defendant approached the intersection he did not lower his rate of speed. When he was from eighty to one hundred and fifty feet southerly of the intersection he saw the Pontiac car approaching on his right from the southwest on Route No. 7. The Pontiac car was then from one hundred and forty to one hundred and fifty feet from the intersection. At that time he could not exactly judge the rate of speed at which it was approaching and he did not attempt to judge its rate of speed. After he first saw the Pontiac car approaching the intersection he did not watch it or give it any attention because he thought he would arrive at the intersection first and cross it. He did not see the Pontiac car again until he was about ten feet from the intersection when Mrs. Anderson, who was riding on the front seat, exclaimed: "Watch it,

Frank,'' or ''Look out, Frank.''˙ The Pontiac car was then about ten feet from the intersection. He immediately turned his car to the left to cross to his left-hand side of the highway. As he turned across the highway he started to apply his brakes, and then he accelerated the speed of his car as he thought he could escape the Pontiac car by going ahead of it and giving it room to go in back of him. He traveled about forty feet on his extreme left-hand side of the highway with his left front and rear wheels on the left shoulder of the highway at a rate of speed of about thirty miles an hour when the Pontiac struck the Essex car. It struck the Essex car about the middle of the right rear door and from there back to the rear. The cars collided on the defendant's extreme left-hand side of the highway. The impact was such that the Essex car was turned over onto its side on the left-hand side of the highway.

When the Pontiac car was approaching the intersection it was traveling on its right-hand· side of the highway. As it was making the curve into the intersection it went straight across the road to its right and struck the Essex car. ·

While the defendant did not at any time observe the rate of speed at which the Pontiac car was traveling after he first saw it, the uncontradicted evidence is that when he first saw the Pontiac car it was approaching the intersection at a rate of speed somewhat in excess of thirty miles an hour up to forty miles an hour. There is no evidence that the rate of speed of the Pontiac car was changed as it approached the intersection.

It fairly and reasonably appears from the evidence that there was nothing that would have obstructed the defendant's view of the Pontiac car as it approached the intersection, if he had looked, and the defendant does not question that fact.

The defendant has cited in his brief many decisions in guest cases in other jurisdictions where it was held that the particular facts in each case did not support a finding that the defendant was guilty of gross negligence in the operation of his motor vehicle although they would support a finding of ordinary negligence. These cases are of little, if any, value in deciding this case. No concrete principle or rule can be established which will determine what constitutes gross negligence upon any given state of facts. Each case depends for its solution upon the determination of the particular facts in the light of accepted principles of law.

■ There is some controversy between the parties as to how far the Essex car was from the intersection when the defendant looked to his right and saw the Pontiac car approaching. The defendant contends that it appears from the uncontradicted evidence that the distance was from seventy-five to eighty feet. The defendant so testified twice, once on direct examination, and once on cross-examination. But he also testified on cross-examination that the distance was from eighty to one hundred and fifty feet. With this testimony in the case we cannot say that the evidence was all one way. It was for the jury to say what part of the defendant's testimony they would believe and what part they would reject. It is not questioned that when the defendant first looked to his right and saw the Pontiac car approaching, that car was one hundred and forty feet or one hundred and fifty feet from the intersection. The jury would have been justified in finding on the defendant's own testimony that each car was approximately one hundred and fifty feet from the intersection when the defendant first saw the Pontiac car approaching.

The statute provides that, except as otherwise provided, all vehicles shall give the right of way to other vehicles approaching at intersecting highways from the right, and that all intersecting highways shall be approached and entered slowly and with due care to avoid accident. P. L. 5110, subdivs. II, III.

■ While the statute is specific in its provisions, it does not necessarily give the vehicle approaching a highway intersection from the favored direction exclusive rights under all circumstances over the vehicle approaching from the disfavored direction. The determination of each case must depend upon its particular facts.

■ The rule as to the rights of vehicles approaching intersecting highways as laid down in *Lachance, Admr.* v. *Myers*, 98 Vt. 498, 129 Atl. 172, and followed in *Jasmin* v. *Parker*, 102 Vt. 405, 148 Atl. 874, and *Beattie* v. *Parkhurst*, 105 Vt. 91, 163 Atl. 589, is in substance as follows: If there is no one approaching the intersection within such distance as reasonably to indicate danger of interference or collision, the operator of the vehicle approaching from the disfavored direction is under no obligation to stop or wait, but may proceed to enter and pass through the intersection as a matter of right; but, if two vehicles approach a highway intersection so nearly at the same time and at

such rate of speed that if both proceed, each without regard to the other, a collision or interference between them is reasonably to be apprehended, it is the duty of the vehicle approaching from the disfavored direction to yield the right of way to the vehicle approaching from the favored direction. If, under such circumstances, the operator of the vehicle approaching from the disfavored direction fails to yield the right of way, and such failure to yield is a proximate cause of an accident, he is guilty of actionable negligence.

The argument of the defendant is that there is a total and complete lack of any evidence in the case tending to show fault on the part of the defendant of a more culpable nature than ordinary negligence; that all that might be claimed by the plaintiff is that the defendant became confused when confronted with a sudden emergency. This defense is not available to the defendant. It cannot be invoked by a party except when he is confronted with a sudden danger through no fault of his own. *Hatch* v. *Daniels,* 96 Vt. 89, 95. But one placed in sudden danger is held responsible for poor judgment if his own negligence contributes to cause the emergency. *Steele* v. *Fuller,* 104 Vt. 303, 311, 158 Atl. 666; *Landry* v. *Hubert,* 100 Vt. 268, 281, 282, 137 Atl. 97; *Harber* v. *Graham,* 105 N. J. L. 213, 143 Atl. 340, 61 A. L. R. 1232; *Fogg* v. *N. Y., N. H. & H. R. R. Co.,* 223 Mass. 444, 446, 111 N. E. 960. The defendant was confronted with a sudden emergency but his own negligence contributed to cause the emergency.

The defendant, referring to the fact that after he first saw the Pontiac car he kept his attention straight ahead on the highway leading from Bennington to North Bennington and paid no further attention to the Pontiac car, says that his testimony shows that he believed that he could enter and pass the intersection before the Pontiac car would reach it; that all that can be said of his conduct is that he ''misjudged'' the speed of the other car. It cannot be said that he ''misjudged'' the speed of the Pontiac car because it appears from his own testimony that he never judged or attempted to judge the speed of that car as it approached the intersection.

The defendant asks us to apply in this case the language used by this Court in *Anderson* v. *Olson,* 106 Vt. 70, 169 Atl. 781, wherein it is said: ''There must be something more than an error in judgment, momentary inattention, or loss of pres-

ence of mind, in circumstances such as these, in order that there may be indicated an indifference to the duty owed to a guest or an utter forgetfulness of his safety." We held that the facts in that case did not show more than ordinary negligence on the part of the defendant.

The facts in that case were different from those in this case. It is not denied by the defendant that the evidence in this case tends to show that he was negligent in the operation of his car; but, on the evidence, we cannot say as a matter of law that his negligence was due only to an error of judgment, momentary inattention, or loss of presence of mind. That was a question of fact for the jury.

The defendant was approaching the intersection from the disfavored direction. It was his duty to watch, and watch effectively, the Pontiac car as it approached the intersection, that is, with the degree of care that a careful and prudent man would have exercised in like circumstances, *Beattie* v. *Parkhurst,* 105 Vt. 91, 94, 163 Atl. 589; but he did not watch it. There was nothing that obstructed his view of the Pontiac car as he approached the intersection, and he was charged with knowledge of what he would have seen, if he had looked, *Beattie* v. *Parkhurst, supra;* but he did not look. The evidence tends to show that if he had looked he would have seen the Pontiac car approaching the intersection at a rate of speed considerably faster than that of his car and that a collision was imminent. When he did look it was too late to avoid the collision.

Assuming, as the defendant claims, that when he first saw the Pontiac car it was twice as far from the intersection as was his car and he therefore thought he would arrive and cross the intersection before the Pontiac car reached it, it appears from his own testimony that his assumption that he would enter and cross the intersection ahead of the Pontiac car was based solely upon the fact that the Pontiac car was twice as far from the intersection as was his car. He utterly failed to judge and consider the rate of speed at which the Pontiac car was approaching the intersection, which was an important, if not a determinative, fact of his right to enter and cross the intersection ahead of the Pontiac car.

The defendant stresses the fact that there was a heavy traffic on both highways that day, but that was a condition affecting merely the degree of care required of the defendant

to be considered by the jury with the other evidence in the case.
We cannot say, as a matter of law, that there is no evidence in the case tending to show that the defendant was guilty of gross negligence in the operation of his car and that such negligence was not a proximate cause of the plaintiff's injuries.

We think that on the facts and circumstances in this case the jury would have been justified in finding that from the time the defendant first saw the Pontiac car until Mrs. Anderson warned him of its approach, when it was too late to avoid a collision, he failed to exercise any care for the safety of the plaintiff and the other occupants of the car, and that he was guilty of gross negligence.

The court below committed no error when it denied the defendant's motion for a directed verdict and submitted the question of gross negligence by the defendant in the operation of his car to the jury. That was clearly an issue of fact for the jury.

*Judgment affirmed.*