Lewis H. Senecal *v.* Robert Bleau et al.

October Term, 1936.

Present: Powers, C. J., Slack, Moulton and Sherburne, JJ., and Jeffords, Supr. J.

Opinion filed January 5, 1937.

490

*Collins M. Graves* for the defendant Clarence Davis.

*Fenton, Wing & Morse* for the defendant Robert Bleau.

*Lawrence & O'Brien* for the plaintiff.

JEFFORDS, Supr. J. This is an action of tort to recover for personal injuries suffered by the plaintiff in an automobile accident. There was a trial by jury and a verdict and judgment for the plaintiff against both defendants. The case is here on exceptions of both defendants.

The accident happened about six o'clock in the morning of March 26, 1936, in the village of Bennington in, or very close to, the intersection of Main and Branch Streets. Main Street, a main artery of traffic, runs east and west and at the intersection is a little over thirty-two feet wide. It is paved with cement and curbed. Branch Street runs north and south and where it intersects Main Street on the south it is about thirty-two feet wide. The intersection on the north is about twenty-two feet wide. The two streets intersect at right angles.

At the southeast corner of the intersection stands a large factory building which runs north and south along the east side of Branch Street 100 feet or a little more and extends easterly along Main Street for a considerable distance. The distance from the northerly edge of the factory to the curb on Main Street is eleven feet and the building is even closer to Branch Street. Because of this building the intersection is a blind one to cars approaching Main Street to the north from Branch Street and also to cars going west on Main Street, and this was known to the plaintiff and both defendants, who were all very familiar with this locality.

At this intersection there are signal lights which at the time were not in operation. The day was clear and the roads dry. There is a slight slope to the intersection for some distance to the east on Main Street.

The plaintiff was riding on the front seat of defendant Bleau's car as his gratuitous guest, having been invited to ride by this defendant somewhere between one-quarter and one-half a mile east of the scene of the accident. This car was proceeding westerly along Main Street at the time of the accident.

The plaintiff testified that Bleau picked him up a short distance from this defendant's house as the plaintiff was starting to walk to his work; that Bleau told him as they were driving along that he (Bleau) was late; that some 600 feet easterly of the intersection Bleau was driving from forty to forty-five miles an hour and he thought he kept going at the same rate of speed and couldn't say whether or not the car slackened speed materially before reaching the intersection; that he was not visiting with Bleau; that when they were about 200 feet from the intersection he was looking down the street and saw the Davis car come out of Branch Street; that the driver of the Davis car didn't seem to look to the right or any way, seemed to look right across, so that he (plaintiff) thought it was going right across up North Branch, and then he said to Bleau, "Stop it, stop it"; that when he said this the Bleau car was about 100 feet from the intersection; that Bleau then reached down between them and he couldn't tell if Bleau picked up a rod or anything; that he couldn't say whether the car slackened speed, the accident happened so quickly.

Defendant Bleau testified that he was driving a fairly large Nash car which had four-wheel mechanical brakes which were all

right; that he maintained a speed of about twenty-five miles an hour as he drove along with the plaintiff and approached the intersection; that going twenty-five miles an hour he could stop his car in twelve feet; that he was visiting with the plaintiff as they drove along but was keeping a sharp lookout ahead and the plaintiff was looking ahead; that as he approached the intersection his car was on its right side of the road; that he blew his horn twice when about fifteen feet east of the intersection and did not hear any horn from Davis' car; that plaintiff did not tell him to stop and in fact made no protest as to the operation of the car; that he first saw the Davis car when his (Bleau's) was about half way in the intersection, and at that time the Davis car had not reached the south line of the intersection; that he could not say how fast the Davis car was going at the time; that Davis did not reduce the speed of his car nor look in Bleau's direction but cut right over the center of the road onto Bleau's side; that in order to avoid hitting the Davis car he turned his car to the right and up over the curb; that just as he hit the curb his car hit the Davis car on its (Davis') right front fender and mud cap, the collision taking place about twelve feet westerly from the northwest corner of the intersection; that when he first saw the Davis car he applied his brakes and this was four or five feet from the point of collision; that he did not apply his brakes with all the force he could, just put them on; that this slowed his car some but he could not tell how fast he was going when the collision occurred; that when his car hit the curb the two front tires blew, causing him to lose control of his car, and from then on the brakes wouldn't work; that his car travelled down the road for some distance with one wheel on the sidewalk, then crossed the road to the other side and over curb and walk and between two trees to within eight or nine feet of the Salem house.

Defendant Davis testified that he was driving an Oldsmobile coupe in which at the time there were, besides himself, his brother and one Smith; that as he drove north along Branch Street and approaching the intersection his car was going about twenty-five miles an hour; that before he reached the intersection he shifted so that when he reached the curb line his car was going between eight and ten miles an hour; that at about the middle of the factory building he blew his horn; that at the time he blew his horn he heard the horn of another car but not very

well, but he knew then that there was a car somewhere in the vicinity of the intersection and that if it were coming from the east it would have the right of way; that after his car got beyond the factory he looked to the right and to the left, could see from 200 to 250 feet but saw no car approaching; that he did not look again but continued across the intersection to a point north of the center line of Main Street and then turned his car to the left; that his eyesight was good; that when the front of his car was out even with the curb of Main Street he looked toward the east for about a 1,000 feet and didn't see any cars coming; that he did not see or hear the Bleau car until the two cars came in contact; that his car was going about five miles an hour at the time of collision, he having intended to let Smith out just west of the intersection; that the collision took place about forty-two feet west of the northwest corner of the intersection. But he testified on cross-examination that the diagram he made on his report (plaintiff's ex. B) showed the position of the two cars at the time of the collision and they were there shown at about the center of the intersection.

The testimony of LeRoy Davis and Smith, the two passengers in the Davis car, was substantially the same as that of defendant Davis.

Officer Benedict testified as to the position of the Davis car after the accident and that he had a conversation that morning with defendant Bleau who told him that the brakes on his car were "not too hot."

Defendant Davis seeks a review on three rulings made by the trial court: (1) Denial by that court of his motion for a directed verdict; (2) failure of that court to charge that if the accident did not take place at the intersection of Branch and Main Streets, the defendant Davis was not liable; and (3) the refusal of the court to grant his motion for a continuance.

We will take up first the question of the motion for a directed verdict. This motion was made at the close of all the evidence in the case and was based on three general grounds: (a) That viewing the evidence in the light most favorable to the plaintiff he had failed to show any actionable negligence on the part of this defendant; (b) that the plaintiff had failed to show that he was free from contributory negligence; and (c) that the plaintiff failed to show that the accident occurred at the intersection of Main and Branch Streets as alleged in the declaration.

The plaintiff alleged in his declaration several negligent acts on the part of this defendant, among which were: That he failed to approach and enter the intersection of Main and Branch Streets slowly and with due care to avoid accident; that he failed to give the right of way to the automobile in which the plaintiff was then and there riding at a time when said automobile was approaching the intersection at the right of this defendant; that he failed to keep a lookout and see that a lookout was kept for the plaintiff and other lawful users of the highway.

The provisions of our statute material in this case are found in P. L. 5110. Subdivision II provides: "Except as hereinafter provided, all vehicles shall give the right of way to other vehicles approaching at intersecting highways from the right; and shall have right of way over those approaching from the left," etc. Subdivision III provides: "All intersecting highways shall be approached and entered slowly and with due care to avoid accident," etc.

 Viewing the evidence in the light most favorable to the plaintiff as it must be, it is apparent that it tended to show that the defendant was negligent in one or all respects as claimed by the plaintiff. He entered a blind intersection knowing that a car was approaching and if it were coming from the east it had the right of way, and admittedly looked only once in that direction. From the evidence it could be found that the other car was in the range of his vision at the time and close to the intersection. It does not avail him to say that he looked and saw no car. He was required to look effectively. This means that he was required to look with the degree of care that a careful and prudent person would have exercised in like circumstances, nothing more. And it will be presumed that he saw whatever was in range of his vision, if he looked. In other words, it will not avail him to say that he looked and did not see what he could not have helped seeing if he had looked. *Beattie* v. *Parkhurst*, 105 Vt. 91, 163 Atl. 589.

 As to contributory negligence. It is true that the plaintiff, riding as an invited guest, was required to take reasonable precautions for his own protection. He must have acted as a prudent person would act in the same situation. *Round* v. *Pike*, 102 Vt. 324, 148 Atl. 283; *McAndrews* v. *Leonard*, 99 Vt. 512, 134 Atl. 710; *Wentworth* v. *Waterbury*, 90 Vt. 60, 96 Atl. 334. But he is not held to the same degree of watchfulness as

is the driver, to keep the speed within proper limits. *Round* v. *Pike, supra; Higgins, Admr.* v. *Metzger,* 101 Vt. 285, 143 Atl. 394; *McAndrews* v. *Leonard, supra.* Nor is he bound to anticipate that the driver will omit the exercise of proper care. *Round* v. *Pike, supra; Higgins, Admr.* v. *Metzger, supra.* The question of plaintiff's negligence must be determined by what he did or omitted to do, without regard to the defendant Davis' lack of care. *Higgins, Admr.* v. *Metzger, supra; Sulham* v. *Bernasconi,* 106 Vt. 192, 170 Atl. 913. Nor can the negligence of Bleau, the driver of the car in which he was riding, be imputed to him. *Higgins, Admr.* v. *Metzger, supra.*

 The plaintiff had ridden in the car only a short distance before reaching the intersection. The evidence tended to show that he was keeping a lookout ahead and not visiting with the driver. When 200 feet from the intersection he saw the Davis car entering. He had a right to assume at first that Bleau would see it and take steps to avoid an accident. When he saw that this was not so, he warned Bleau when 100 feet from the intersection. It appears that if Bleau had then heeded the warning and applied the brakes, and if they were in good condition, he could have avoided the accident. There is no evidence in the case to the effect that the plaintiff knew that the brakes were not in good condition.

The question of contributory negligence was clearly one for the jury.

 In considering the third ground of the motion it is well to note at the outset the wording of the declaration which is as follows: "And at the place of the happening of the accident hereinafter complained of, the said Branch Street and the said Main Street intersect each other at right angles," etc. Thus it is seen that it is not alleged that the accident took place "at" or "in" the intersection.

However, it was not material to the issue in this case whether the accident took place at the intersection or a few feet one side or the other of it. This is what distinguishes the situation here from that presented in the cases cited by this defendant on this point.

 Proofs need not correspond word for word with the allegations of the pleadings. Huddy, vols. 15, 16, p. 245.

It has been held that the allegation that a collision took place "at" an intersection did not preclude proof that it took

place a few feet from the same. *Kitchel* v. *Gallagher,* 126 Ore. 373, 270 Pac. 488.

Moreover, it should be noted that there was evidence in this case tending to show that the accident did happen at or in the intersection.

There was no error in denying this defendant's motion for a directed verdict.

 The next question briefed by this defendant relates to the charge of the court. After the charge this defendant *objected* to the failure of the court to charge that unless the plaintiff has proved by a fair balance of the testimony that the collision took place within the intersection as claimed and argued by defendant Bleau and the plaintiff, that the jury must find for defendant Davis.

Passing over the question as to whether an exception was properly saved, it is apparent from what we have just said that this claim of error is without merit.

Some two weeks before trial both defendants moved that the case be continued. There were several grounds in the motion.

It appeared from the medical testimony heard at the time that if the case were tried at that term of court it would be necessary that the plaintiff come to court on a stretcher. One ground of the motion, and the only one relied on here, was that it would be prejudicial to the defendants to have the plaintiff appear in such a manner and prevent them from having a fair and impartial trial.

In the first instance this motion was granted but on what ground or grounds does not appear.

After this ruling by the court it appears that more medical testimony was heard but this is not reported. The court then changed its previous ruling and denied the motion as a matter of discretion, and exception was allowed on the ground that there was an abuse of discretion.

The plaintiff while in court was on a cot and testified from it.

This defendant argues that there was an abuse of discretion in that the appearance of the plaintiff in such a manner must have caused undue sympathy for him on the part of the jury.

At the first hearing on this motion Doctor Hinds, who was improved by defendant Bleau, testified as to the condition of the plaintiff and as to the advisability of an operation. On cross-examination he was asked:

"Q. Don't know whether he would be able to be in court six months from now or year from now?

A. I couldn't tell that definitely, any more than I could how the operation would come out.
 * * *

Q. Do you know if he will be in the same condition six months from now as he is now?

A. I can't answer it."

As we have said before, we do not have before us the medical testimony later taken on this point. It is apparent, however, from the testimony of Doctor Hinds that no definite assurance could be given as to the time when the plaintiff would be able to come to court other than the way he did. There is nothing in the record which indicates that any suggestion was made that he testify by way of deposition. He could not be obliged to wait indefinitely for an opportunity to try his case.

This exception is also without merit, no abuse of discretion having been shown.

As to defendant Bleau. The only exception briefed by this defendant relates to the refusal of the lower court to direct a verdict in his favor. At the close of the plaintiff's case this defendant moved for a directed verdict on the grounds that no gross or wilful negligence was shown on his part and that the plaintiff was guilty of contributory negligence. The motion was denied and again made at the close of all the evidence and again denied.

The plaintiff's allegations of negligence as to this defendant were: Excessive speed; failure to keep a proper lookout; failure to approach and enter the intersection slowly and with due care; failure to have his car equipped with adequate brakes, and approaching and entering the intersection at an excessive rate of speed when he knew that his brakes were inadequate.

There is no need again to review the evidence nor the statutes applicable to this situation which have already been referred to. In addition to the statutes previously noted, P. L. 5114 provides that a motor vehicle operated on any highway shall be equipped with adequate brakes.

The lower court submitted to the jury only the question of gross negligence, so we will confine ourselves so far as the first

ground of this defendant's motion is concerned, as to whether the evidence warranted a submission on this point.

The plaintiff being at the time of the accident a gratuitous guest of this defendant, it was necessary to show gross negligence on his part in order to make this defendant liable. P. L. 5113.

Gross negligence has been defined by this court in *Shaw, Admr.* v. *Moore,* 104 Vt. 529, 162 Atl. 373, 86 A. L. R. 1139, and in later cases. It is not necessary to repeat what is said therein, except to say that gross negligence is equivalent to the failure to exercise a slight degree of care. *Rich* v. *Hall,* 107 Vt. 455, 458, 181 Atl. 113.

No concrete principle or rule can be established which will determine what constitutes gross negligence upon any given state of facts. Each case depends for its solution upon the determination of the particular facts in the light of accepted principles of law. *Rich* v. *Hall, supra.*

Viewing the evidence in the light most favorable to the plaintiff, as we must, it discloses that this defendant was driving his car at a fast rate of speed with brakes described by him as "not too hot," approaching an intersection which he knew was a blind one, and visiting with the plaintiff; that with an equal opportunity, he failed to see the other car when it was observed by the plaintiff entering the intersection, and did not see it until his car was partly in the intersection; that after the warning by the plaintiff he failed to slacken speed until within four or five feet of the other car and then did not apply his brakes with all the force he could, but just put them on; that he turned his car to the right and over the curb, hitting the other car, and then, with two tires blown, went across the street and over the other curb, not coming to a stop until his car had travelled over 100 feet from the point of collision.

We hold that these facts made a jury question on gross negligence.

What we have said in regard to contributory negligence in respect to the motion of defendant Davis applies with equal force to this motion.

The motion on the part of defendant Bleau for a directed verdict was properly denied.

*Judgment affirmed.*