CHARLES P. KERIN, B. N. F. *v.* CARLISLE COATES & C. I. T. CORP.

May Term, 1942.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 6, 1942.

*Bernard J. Leddy* for the plaintiff.

*Theriault & Hunt* for the defendant.

BUTTLES, J. On December 2, 1940, at about noon, the plaintiff while riding, as a gratuitous passenger, in an automobile owned and driven by the defendant Coates from Montpelier en route to Rutland was injured in a head on collision with an automobile owned by the defendant C. I. T. Corporation. The plaintiff's action for damages resulted in the trial court in a verdict and judgment for the defendant C. I. T. Corp. and for the plaintiff against the defendant Coates, which, in order to be sustained as against Coates, hereinafter called the defendant, must have been based, under P. L. 5113, upon a finding of gross negligence on his part. The only question presented for our consideration is whether there was any evidence in the case from which such negligence could properly be found, which question was saved by the defendant's exceptions to the denial of his motion for a directed verdict made at the close of the plaintiff's case and renewed at the close of all the evidence, to the denial of his motion to set aside the verdict, and to the judgment.

Taking the evidence most favorably for the plaintiff, as it must be taken in considering this question, the jury would have been justified in finding the following facts. Near the place where the accident occurred Route 100 divides to make a Y intersection with U. S. Route 4 running approximately east and west from Rutland to White River Junction. There is a plot of land in the middle of this intersection which is a nearly equilateral triangle measuring 279 feet on the side bounded by the westerly branch of the Y coming into Route 4 in the direction headed towards Rutland. This branch of Route 100 is hereinafter termed the right branch. Both cars had entered this branch when they collided, the place of collision being approximately 150 feet from the intersection of the branch with Route

4. There is here a grade of about six per cent sloping upward to the west towards Rutland, and a slight curve to the west, described by a witness as a five degree curve. The grade continues upward through the right branch and for about fifty feet into Route 4 and then "levels off." From the brow of the hill there is a clear view of the highway easterly through the branch for 500 feet.

■ The Coates car entered the right branch about in the middle of the road at a speed of about 50 miles per hour, which was reduced by two or three miles before the collision. The plaintiff estimated the speed of the C. I. T. car at 50 to 55 miles per hour. Since it could be found to be 200 feet from the brow of the hill to the place of impact, and the cars were approaching each other at practically the same speed, they would be nearly 400 feet apart when the C. I. T. car came over the brow of the hill, and it could also be found that they were then visible to each other and continued to be while covering the intervening distance. But the defendant admitted that he did not see the other car until he was within 100 or 150 feet of it. He remembered doing nothing to avert the collision except to set his foot brake. There is a stop sign at the right just before this branch enters Route 4 and also a caution sign in the angle formed by the branching of Route 100. The defendant had been employed by the state highway department since 1926 and was very familiar with this road, over which he had driven about once a week on an average, at all seasons of the year and under all conditions of weather. He was familiar with the intersection and knew of the stop sign that he was approaching.

A considerable amount of snow which had been plowed from the road formed a bank on each side. The roadway in the right branch was 17 feet wide between the snow banks. The surface was very slippery with an old snow or ice base on top of which there was about three inches of new, mealy snow, mixed with some sand which did not afford traction. The officer who investigated the accident soon after it occurred noted a skid mark in the road which indicated that 50½ feet before reaching its position at the time of the collision, the defendant's left rear wheel was five feet from the snow bank on its left side, and when the cars met this wheel was 1 foot 9 inches therefrom. Since the

car measured 57¼ inches between centers of treads and the roadway was 17 feet wide these measurements indicate that when the defendant set his brakes nearly three fourths of his car was on the wrong side of the middle of the road and when the impact occurred it was entirely on the wrong side.   .

We cannot agree with the defendant's contention that the fact that none of the occupants of the cars suffered very serious injury is a physical fact which precludes acceptance of the plaintiff's evidence as to the speed of the cars.   Both cars were very badly damaged and it is common knowledge that the injuries sustained by the occupants of colliding cars are not necessarily proportionate to the speed with which they collide.

■ The definition of gross negligence as used in P. L. 5113 is given in *Shaw, Admr.* v.·*Moore,* 104 Vt. 529, 531, 162 Atl. 373, 86 A. L. R. 1139, and in *Dessereau* v. *Walker,* 105 Vt. 99, 101, 163 Atl. 632.   That definition is referred to in our later cases and it is unnecessary to repeat it here.   The plaintiff's declaration charges the defendant with gross negligence with respect to speed, driving on the wrong side of the road, failure to operate his car in a careful and prudent manner, and failure to keep an adequate look out for other traffic.   We have said repeatedly that there is no concrete rule by which the existence of gross negligence can be determined for each case must be judged according to its own facts, considered in the light of accepted principles of law. *Rich* v. *Hall,* 107 Vt. 455, 459, 181 Atl. 113; *Hall* v. *Royce,* 109 Vt. 99, 104, 192 Atl. 193; *Powers* v. *Lackey,* 109 Vt. 505, 506, 1 Atl. (2d) 693; *Kelley* v. *Anthony,* 110 Vt. 490, 494, 8 Atl. (2d) 641; *Hastings* v. *Murray* et al., 112 Vt. 37, 41, 20 Atl. (2d) 107.   It follows that in determining whether an act or omission was grossly negligent all material facts and circumstances must be considered, some of which may, of course, have evidentiary value as to other acts of alleged negligence.   The Massachusetts court, whose definition of gross negligence as applied to automobile operation is identical with our own, has said that the driver's conduct may amount to gross negligence without any single circumstance appearing to afford a basis for such conclusion if the combination of circumstances warrants such finding. *Jones* v. *Melvin,* 293 Mass. 9, 199 N. E. 392, 393, 394.   See also *Lefeave* v. *Ascher,* 292 Mass. 336, 198 N. E. 251, *Szemkus* v. *Petrila,* 299 Mass. 551, 13 N. E. (2d) 408.

. In our opinion the jury could properly find that this defendant was guilty at least of ordinary negligence, under the circumstances disclosed by the evidence to which we have referred, in driving at the speed he did, in driving where he did and in failing to see the approaching car as soon as he could and should have seen it. In considering whether he was guilty of gross negligence the fact that there was evidence of his negligence in these three respects tended to indicate that such negligent acts were not all due merely to an error in judgment, momentary inattention or loss of presence of mind, which we have said do not alone constitute gross negligence. *Anderson* v. *Olson,* 106 Vt. 70, 72, 169 Atl. 781; *Rich* v. *Hall,* 107 Vt. 455, 461, 181 Atl. 113.

The present case bears some resemblance to *Ellison* v. *Colby,* 110 Vt. 431, 8 Atl. (2d) 637, in which there was evidence that the defendant, familiar with the dangerous conditions caused by a flood at the place of accident and elsewhere on his route, drove upon and across a bridge at the rate of about 50 miles per hour in the night time, and at the exit from the bridge failed to enter upon that part of a newly made dirt fill that had been made safe for traffic. It was held that a finding of gross negligence was warranted.

It seems clear that in this case the jury could properly find that the defendant failed to exercise even a slight degree of care, thereby indicating indifference to his duty to his guest and utter forgetfulness of the guest's safety, and constituting gross negligence.

*Judgment affirmed.*