## State of Vermont v. Rene Meunier

[ 224 A.2d 922 ]

October Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 6, 1966

*Patrick J. Leahy,* State's Attorney, for the State.

*John A. Burgess* for defendant.

**Barney, J.** On a Sunday afternoon in August, 1965, a state trooper obtained a radar reading of one hundred seven miles per hour from a passing ambulance. The speed limit was 65 miles per hour. Since such vehicles have some exemption from the speed regulations when on emergency duty, 23 V.S.A. §1143, the ambulance was not stopped, even though it was not sounding its siren or showing a flashing red light. The registration was recorded, however, and later checked out by the trooper.

From the motor vehicle registration records it was determined that the ambulance belonged to a certain Elmwood Funeral Home. When the trooper contacted the funeral home, he reached the respondent. Upon inquiry by the trooper, the respondent acknowledged that he was the operator of the ambulance on the occasion under investigation. He was then asked if an emergency existed. He replied that he was responding to a call to act as standby ambulance at the Catamount Race Track, to replace one that did not show up. He said that it was late, and he was in a hurry to get there.

He acknowledged that there was no emergency other than holding up the starting of the race. At the time of this conversation the respondent was not in custody nor under arrest. Although not otherwise disclosed by the facts in the case, in oral argument the respondent stated that the trooper, fully uniformed, came to the respondent's apartment at the funeral home and carried on the conversation in person.

The respondent was prosecuted for careless and negligent driving in violation of 23 V.S.A. §1181. The jury returned a verdict of guilty. During the trial, when the state's attorney was offering the testimony of the trooper, the respondent timely objected to all of it on the grounds that those admissions were obtained without any indication to the respondent of his right to remain silent or consult counsel, and without any warning that they could be used against him in court. The overruling of the objections made on these grounds is the only issue before us in reviewing the conviction below.

In 1964, the United States Supreme Court, in *Massiah* v. *United States,* 377 U.S. 201, and *Escobedo* v. *Illinois,* 378 U.S. 478, dealt with the admissibility of confessions where the constitutional right to counsel was undercut by denying a respondent the right to see his counsel, interrogating him in the absence of his counsel and failing to warn him of his right to remain silent. In each of those appeals the Supreme Court found confessions inadmissible that were obtained in violation of those rights. The respondent argues that the rule of those cases bars the testimony related by the investigating officer in this case concerning his conversations with the respondent.

Without attempting to evaluate the total impact of *Massiah* and *Escobedo,* one factor critical to the results in those cases is absent here. Both decisions are concerned with incriminating statements obtained after the accused had been taken into custody. The respondents had each been arrested, and, in fact, each was represented by counsel at the time of the taking of the statements, as the investigating officers well knew. In the *Massiah* case, the respondent was free on bail, and the incriminating matter was obtained by pre-arranged electronic eavesdropping on a conversation with an accomplice who was cooperating with the police.

That custody or restraint was an essential of the *Escobedo* and *Massiah* cases is established by the later case of *Miranda* v. *Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 706. The Court said there:

> (T)he prosecution may not use statements, whether expulpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

Without detracting from the critical importance of the constitutional rights to counsel and against self-incrimination, we are not disposed to overturn this careless and negligent driving conviction on the record this respondent has produced. Although the bounds of the *Miranda* case are not as yet exactly staked out, Chief Justice Warren, speaking for the majority made these pertinent comments:

> "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda* v. *Arizona, supra,* 384 U.S. 436.

"General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." *Miranda* v. *Arizona, supra,* 384 U.S. 436.

Significantly, there is footnoted to the last comment the difference between questioning at a respondent's house or place of business and in-custody interrogation.

■ Certainly the conversations at issue here clearly fall within the range of these comments. To say, as the respondent would have us, that the fact that the inquiries were put by a uniformed officer is, of itself, coercive, would run counter to this law, and make unusable any evidence obtained from an unwarned suspect by a police officer under any circumstances. We do not so hold. It may perhaps be worth noting, however, that early and adequate notice of his rights given a suspect may make constitutionally admissible statements inadmissible if the notice of the right to counsel and to remain silent was inadequate or too late. But the challenge to the testimony in this case on these constitutional grounds was properly denied.

*Judgment affirmed.*