## State of Vermont v. Richard A. Sawyer

[ 230 A.2d 781 ]

April Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 6, 1967

*Paul B. Wolfe,* State's Attorney, for the State.

*Davis, Martin & Free,* for defendant.

**Holden, C.J.** The Orleans Municipal Court has granted the State permission to appeal before judgment is entered on a directed verdict of acquittal as provided in 13 V.S.A. §7403. The questions certified for review concern two rulings which excluded certain evidence offered by the State and the granting of the respondent's motion for a directed verdict·which ended the trial at the close of the State's case.

The prosecution was based on an alleged violation of 13 V.S.A. §§1181-1182(b). The information charged the respondent operated a motor vehicle on February 6, 1965; at the intersection of U.S. Route 5 and State Route 14 in Coventry in a careless and negligent manner

which caused an accident from which a death resulted. The criminal negligence alleged in the complaint specifies that the respondent entered the intersection "—without keeping proper lookout for approaching vehicles and when said intersection was not clear of other traffic—."

There was no direct evidence of the accident nor of the events which immediately preceded the collision. The facts in the State's case were presented by way of the testimony of the State police officer who investigated the accident and other travelers who arrived at the scene shortly after the occurrence.

This evidence established that U.S. Route 5 had been designated a "through way" by the state highway board in 1932. A number of warning signs were in place along Highway 14 to caution north bound travelers on the approach to the intersection. A stop sign had been erected at the intersection to halt north bound traffic before entering U.S. Route 5 from Route 14. The stop sign is located at the western edge of a triangular island which divides the east line of Route 14 and the west line of U.S. 5. The through way at this point is 75 feet wide.

U.S. 5, at the intersection, had an improved blacktop surface with a painted center line. The highway is nearly straight for a distance of 750 feet north to Coventry, at a grade of six per cent. Route 14 approaches U.S. 5 from a distance of 250 feet south of the intersection at a six per cent grade and on a slight westerly curve of two or three degrees. There was testimony by an engineer that two motorists approaching the intersection would have a combined sight distance of 1,025 feet.

The accident occurred at daylight with visibility characterized as "pretty good." The pavement was wet but it was not snowing.

The State's evidence permits the inference that the decedent, Donald Cheney, was traveling south on U.S. Route 5 when the 1961 Chevrolet Corvair, he was operating, came into collision with a 1964 Dodge operated by the respondent at a point 190 feet north of the stop sign on Route 14. The damage from the impact was inflicted in the right front sections of both vehicles. The Chevrolet also sustained damage to its left rear as it was propelled across the east lane, against a line of guard rails where it came to rest, headed south along the eastern edge of Route 5. The force of the collision turned the front of the respondent's vehicle in a clockwise direction. It came to a halt,

headed in the opposite direction across the south bound lane of Route 5. Cheney suffered injuries which caused his death during the night following the accident. The respondent and his passengers were all hospitalized.

The investigating officer testified that in his opinion the point of contact at the intersection was one foot west of the painted center line on U.S. Route 5. However, he conceded actual contact could have been made within a radius of five feet of the point where he located it.

The officer's graphic reconstruction of the accident was received in evidence as an exhibit. It indicated that the respondent's vehicle entered the intersection "heading into Coventry at somewhat of a northeasterly direction." A witness named Willis, who came on the scene shortly after the accident, asked the respondent if he had stopped for the stop sign. According to his testimony the respondent answered "yes."

At the outset of the trial the prosecution introduced in evidence a certified copy of the accident report filed by the respondent with the Commissioner of Motor Vehicles on February 9, 1965. The report apparently was submitted in response to the provisions of 23 V.S.A. §1005. This statute requires the operator involved in an accident where personal injuries are sustained, to report such accident to the commissioner in writing within seventy-two hours. Violation of this provision can result in a fine of $100 and imprisonment for thirty days.

Before the State's case was concluded the respondent moved to strike the accident report. The motion was based on the contention that the retention of the exhibit in evidence would constitute a violation of the respondent's privilege against self-incrimination. On the strength of this contention, the trial court ordered the respondent's report to be struck from the evidence.

The basis of the ruling below seems to be that since the report was submitted in compliance with a penal statute, any statement in its content is the equivalent of involuntary self-incrimination. If so, on the strength of the record presented here, we are not persuaded the basis for the ruling was sound. The privilege of operating a motor vehicle is subject to reasonable conditions in the interest of public safety. And the requirement that the operator report accidents which occur in the exercise of that privilege does not, of itself, com-

pel him to yield up constitutional protection against testimonial incrimination. See *State* v. *Sterrin,* 78 N.H. 220, 98 Atl. 482, 483; *State* v. *Gallagher,* 102 N.H. 335, 158 A.2d 765, 768.

However, that may be, we see no occasion here to judge the ruling on constitutional grounds. We find nothing in the exhibit which was excluded that tends to incriminate the respondent of the charge of negligence presented against him.

The report, in its aspect most favorable to the State, shows only that the respondent's speed was "20-30 m.p.h." It further stated—"I cannot accurately recall all details of the accident at the present time as I received a severe blow to my head. However, I believe I had passed through the intersection and was proceeding in my own lane in a northerly direction when the other vehicle struck mine."

■ The State has failed to indicate how the information supplied in the report tended to substantiate either the charge that the respondent failed to look for approaching vehicles or that the way was not clear of other traffic when he started into the through way. Absent such showing, if there was error in striking the report, it worked no prejudice to the State. Indeed the evidence which was stricken was at least as consistent with due care as with any implication of negligence in the respect alleged in the information. Prejudicial error does not appear. Supreme Court Rule 9; *Penna* v. *State Highway Board,* 122 Vt. 290, 295, 170 A.2d 630; *State* v. *Fairbanks,* 101 Vt. 30, 34, 139 Atl. 918.

The State also claims error in the ruling of the court which excluded an oral statement made to the state police officer. The statement was given three hours after the accident, while the respondent was being treated for head injuries at the Orleans County Memorial Hospital. Compare *State* v. *Meunier,* 126 Vt. 176, 224 A.2d 922, 923. The trial judge inquired of the State's Attorney concerning his offer. His reply was—"The substance of the conversation with the respondent as related to where he had come from and where he was going and what his speed was."

Counsel for the respondent objected on the ground that there was no showing that the respondent was advised of his right to counsel or warned that anything he might say might be held against him. Upon this objection the offer was excluded.

■ Again, the offer made by the State is subject to the infirmity that it was not directed to the negligent acts specified in the informa-

tion. The questions of speed and the respondent's destination at the time of the event do not bear directly on whether he maintained a proper lookout in entering the intersection. And it does not appear from the offer how the exclusion prejudiced the State's case.

We agree with counsel for the State that the court's ruling cannot be sustained on the strength of *Escobedo* v. *Illinois,* 278 U.S. 478, 12 L.Ed. 977. The circumstances which attended the interrogation of the respondent in the hospital, even though but three hours after the accident, are not the equivalent to those which prevailed in *Escobedo* where the right of an accused, while in custody, was asserted and denied. And the guidelines pronounced in *Miranda* v. *Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602, are not necessarily binding since they are not required to be applied retroactively. *Johnson* v. *New Jersey,* 384 U.S. 719, 16 L.Ed. 2d 882, 86 S.Ct. 1772. The respondent was tried in May 1966, more than a month before the decision in *Miranda* was announced.

It should be noted, however, that when confronted with the objection that the respondent's constitutional privilege had been violated, it was incumbent on the State to establish, by way of a preliminary hearing, out of the presence of the jury, that the statement of the respondent was voluntarily given. A preliminary finding by the trial court on this issue is an essential safeguard to the constitutional protection asserted in the respondent's objection. *Jackson* v. *Denno,* 378 U.S. 368, 12 L.Ed. 2d 908, 921, 84 S.Ct. 1774, 1 A.L.R. 3d 1308. It is of equal importance in an appeal by the State from an exclusionary ruling to test whether the evidence should have been received. Without such a determination, we are unable to say that the exclusion of the respondent's statement was in error.

The remaining question concerns the order granting the respondent's motion for a directed verdict. In support of its claim of error, the State argues that photographs of the damage sustained by the two vehicles support the inference that the fatal impact was delivered primarily by the respondent's car. Conceding the impossibility of estimating the precise speed of the respective vehicles, counsel for the State urges that the force of the impact was such that it indicates the Dodge was traveling at a rate beyond the capability of an automobile that had started from a stopped position less than 190 feet away.

We find no evidence concerning the capacity of the respondent's vehicle to accelerate within the distance specified. But whether the evidence permitted the inference claimed by the State, to oppose other evidence that the stop sign was heeded, is beside the point. The respondent was not charged with entering the intersection at excessive speed. Neither was he charged with failing to heed the stop sign, nor with failing to yield to the decedent's vehicle contrary to the requirement of 19 V.S.A. §41.

The complaint presented against the respondent called upon the State to prove that the respondent entered the intersection "without keeping proper lookout for approaching vehicles—when the intersection was not clear of other traffic, thereby causing an accident from which death resulted—."

There is no dispute that the decedent's vehicle had not reached the particular limits of the intersection when the collision occurred. And no testimonial evidence was presented on the issue of whether the respondent looked for approaching traffic.

Of course direct proof is not always essential to establish negligent conduct at an intersection. It is the duty of an operator, before entering an intersection to watch for other vehicles approaching at close range and in plain view. He must look effectively and is charged with knowledge of what should be clearly seen. *Dashnow* v. *Myers*, 121 Vt. 273, 281, 155 A.2d 859; *Senecal* v. *Bleau*, 108 Vt. 486, 494, 189 Atl. 139; *Rich* v. *Hall*, 107 Vt. 455, 462, 181 Atl. 113. But in order for these inferences to justify a conviction, it was essential to establish the speed at which the decedent's vehicle was traveling toward the intersection. Otherwise, it cannot be known that the decedent was approaching at such close range, in open sight, with the danger of collision sufficiently imminent to constitute criminal negligence against one charged with failing to maintain a proper lookout.

When two motor vehicles approach an intersection, the known speed at which the vehicle from the favored direction is traveling is important, if not the determinative fact of the right of the disfavored vehicle to proceed. *Rich* v. *Hall*, 107 Vt., *supra*, at 462. Here the speed of the Cheney vehicle was unknown. There is no evidence that the respondent failed to look, nor can it be inferred that the decedent's car was in plain sight when the respondent entered the intersection. These facts could only be supplied by suspicion and conjecture.

Since this was impermissible, the verdict for the respondent was properly granted. *State* v. *Mecier,* 126 Vt. 260, 227 A.2d 298, 300; *State* v. *Hart,* 119 Vt. 54, 58, 117 A.2d 387; *State* v. *Boudreau,* 111 Vt. 351, 364, 16 A.2d 262.

*Order granting respondent's motion for directed verdict of not guilty is affirmed. Judgment is entered on the verdict as provided in 13 V.S.A. §7403.*