229 So.2d 551 (1969)
Herman SMITH
v.
STATE of Mississippi.
No. 45554.
Supreme Court of Mississippi.
December 8, 1969.
Rehearing Denied January 12, 1970.
*552 Eddie H. Tucker, R. Jess Brown, Jackson, for appellant.
A.F. Summer, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and Velia Ann Mayer, Sp. Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Justice:
This is a case where a young single girl was raped by two young negro men. The defendant was indicted, tried and convicted of the rape and sentenced to serve a term of life in the state penitentiary. These are the facts leading up to the sentence given the appellant in the Circuit Court of Marion County, Mississippi.
The victim was twenty (20) years of age at the time of the alleged rape. She was a student at the University of Southern Mississippi School of Nursing. She lived with her widowed mother. Her father had died about three (3) years before the assault. She went home about 1:30 the morning of August 1, 1968. She undressed and went to bed, but was disturbed by a "scraping noise" and arose to investigate. She turned on the light in her bedroom, and was confronted by two negro men. The largest negro "grabbed her" and threw her on the bed. She begged her assailants to *553 take money and not to rape her. She screamed until one of the negroes put his hand on her mouth. She bit his hand. The negroes took her out in the back yard and threatened to kill her. One of them pointed a pistol at her head and each of the negroes raped her. They then took her back into the house and threatened to kill her if she told the police or her mother what happened. After the negroes left, and as soon as she could secure the doors of the house, she called the police. The police arrived immediately. Miss Smith told the officers what had happened and they took her to the hospital. Miss Smith was examined by a doctor at the hospital. The examination revealed that the hymen had been torn and the doctor discovered active sperm present in her vagina. An investigative officer from the highway patrol joined the investigation and he discovered a latent fingerprint on the glass in the south door of the Smith residence. This print was delivered to the fingerprint expert director of the Identification Bureau of the Mississippi Highway Patrol. In the meantime, the local officers were asking questions and seeking information with reference to persons whose personal appearance fitted the description given the officers by the victim, and during the investigation "Herman Smith's name came up." The highway patrol officer asked a colored deputy sheriff "if he would contact Herman Smith and ask him if he would voluntarily come in to be interviewed by me (the officer)."
Later, Herman Smith came to the place where the officers were investigating the crime. He was advised that he was not required to submit to interrogation and that he was entitled to have an attorney if he so desired. The undenied testimony of the officer shows that the defendant, after a short time, confessed that he committed the crime.
Thereafter, on August 14, eight (8) young negro men were grouped together in the Hinds County jail, and Miss Smith was permitted to see them to determine whether or not she could identify any of them as her assailant. Before this occurrence the appellant was advised that he could have a lawyer present at the "lineup" if he so desired, but he declined. "He said he didn't guess he needed one." Miss Smith identified the appellant, Herman Smith, as one of her attackers. A picture of the young negroes was made a part of the record. The picture shows appellant to be a fully grown man; however, there is testimony that the appellant was "nineteen or eighteen, somewhere along there" at the time of the trial.
The record is not clear as to what occurred after the officer had warned the defendant because of continued interruptions made during the interrogation in the absence of the jury. It finally appears, however, that Smith first made an oral statement to the investigating officer after he had been warned of his rights. He was then charged with burglary. The prisoner was taken to the highway patrol headquarters where he signed a written waiver and a written confession admitting his participation in the crime.
His fingerprints were taken by the fingerprint expert of the highway patrol. An examination of these prints revealed that the left middle and left ring finger of the prints taken from Herman Smith matched the latent fingerprints taken from the south door of the victim's home.
The defendant offered no testimony during the absence of the jury to contradict the officer with respect to the warning, waiver and confession.
The appellant has assigned eleven grounds for which it is contended the conviction and sentence of appellant should be reversed. These alleged errors, in their final analysis, may be grouped into the following headings: First, it is said, the indictment and trial of the appellant should be vacated because negroes and women were systematically excluded from the grand and petit juries in Marion County, Mississippi. Second, it is contended that *554 appellant was unlawfully arrested, and for that reason, (1) his confession, (2) his fingerprints, and (3) evidence with reference to the identification made by the prosecuting witness at a "lineup" should have been excluded from the evidence, because the defendant was unlawfully held in custody and interrogated without the aid and presence of an attorney. Third, the exclusion of the testimony obtained by the illegal detention of appellant leaves no testimony on which to base a conviction of appellant. Fourth, appellant was prosecuted as an adult and such prosecution is in violation of the Fourteenth Amendment to the Constitution of the United States.

I.
A hearing was held upon the defendant's motion to quash the indictment upon the ground that negroes were systematically excluded from service on the grand and petit juries. During the hearing on this issue, it was agreed that the record in another case previously heard in June, 1968, where this same issue was raised as to the systematic exclusion of negroes from jury service, and it was agreed that this testimony would be evidence on the issue in the instant case. The record in that case contains the testimony of the circuit clerk, the chancery clerk, five (5) supervisors and the deputy sheriff, all officers of Marion County. Two attorneys were also called as witnesses. A careful, unbiased reading of this testimony leaves no doubt that the jurors of Marion County are now being summoned without regard to their race. The appellant argues, however, that there are not enough negroes being summoned for jury service in proportion to the number of negroes living in the county.
The thesis of this argument is based upon the population and not upon the number of negroes qualified for jury duty. This, of course, is not the proper criteria, because jurors are not summoned from the population at large  they are summoned from qualified electors and freeholders above twenty-one (21) years of age living within the county. Moreover, idiots, insane persons (Section 3235, Laws 1962, ch. 575; amended by 1965 Ex.Sess., ch. 18, § 1), criminals, gamblers, habitual drunkards (Section 1762, Mississippi Code 1942 Annotated [Supp. 1968]), persons above the age of sixty-five (65) and persons who have been jurors within the past two (2) years (Section 1765, Mississippi Code 1942 Annotated [Supp. 1968]) are not summoned as jurors regardless of race. The appellant argues, however, that it was established by the record that negroes had been systematically excluded several years ago (1963-1965); therefore, it is said, the burden was upon the State to show that there had been a change in the activity of the authorities since that time as to the exclusion of negroes from jury service.
We pointed out in Black v. State, 187 So.2d 815 (Miss. 1966), that since negroes would not register nor qualify as electors for many years and were thus not qualified as jurors, it became necessary for the people of this State to change the Constitution of the State by their vote so as to give the legislature authority to fix the qualification of jurors. Thereafter, the legislature amended Section 1762, Mississippi Code 1942 Annotated [Supp. 1968] by Laws of 1962, Chapter 308, so as to make "[E]ither a qualified elector, or a resident freeholder of the county for more than one year * * * a competent juror." Thus, negroes who are freeholders and who have refused to qualify as electors were nevertheless brought within the reach of the courts as competent prospective jurors.
The record shows in the instant case that several "drives," campaigns, had been made by interested persons to get negroes to qualify as electors. There has been a considerable increase of qualified negro voters who are now subject to jury duty. The record also shows that there has been an increase from a very small beginning of negroes summoned for jury duty in 1963 to 37.9 per cent of all persons summoned for jury duty at the June term *555 of court, 1968. It would be just as much a violation of the United States Constitution to require the local authorities to summon more jurors from a lower proportion of qualified negroes simply because they are negroes as it would be to exclude negroes from jury service. Jurors are not to be summoned because of their race, but rather, summoned without discrimination from all persons qualified as jurors.
We hold, therefore, that the record in this case does not show a systematic exclusion of negroes from jury service and that the State has met the burden of proof necessary to show that there is no systematic exclusion of negroes from the juries in Marion County.

II.
The argument that the failure to include women as qualified jurors violated appellant's rights under the Fourteenth Amendment of the Constitution is not well taken for two reasons: (1) the appellant has no standing to raise this point; (2) the Fourteenth Amendment is not applicable on the issue as to whether or not women will be required to serve as jurors in state courts. Shinall v. State, 199 So.2d 251 (Miss. 1967).
We held in State v. Hall, 187 So.2d 861 (Miss. 1966), that the power to prescribe the qualifications of jurors is in the legislature and that the legislature had the power to exclude women from jury duty. Since that time the legislature has made women subject to jury duty in this state. Section 1762, Mississippi Code 1942 Annotated (Supp. 1968), as amended by Laws, 1968, Chapter 335, § 1.

III.
It is argued that the appellant was unlawfully arrested and that the confession, fingerprints, and testimony of the lineup identity of the defendant were obtained by the police from him by reason of his unlawful arrest, unlawful interrogation and without his constitutional right to have an attorney present.
The undenied testimony shows that a highway patrol investigating officer, who was making an effort to locate the negroes who committed the rape of Miss Smith, learned the name of the defendant Herman Smith. The officer suggested to the deputy sheriff that he contact Herman Smith to find out whether or not he would come to the courthouse to talk with the highway patrol investigator. Later, the defendant came in with the deputy sheriff. The investigator did not talk to Smith, however, until he advised him of his right not to talk to him and advised him that he had a right to have a lawyer present if he did talk to the officer.
It is, of course, not necessary for an officer to warn every person he talks to about a crime of his constitutional rights; nor is it necessary that a person being interrogated sign a waiver waiving the presence of an attorney, until such time when the investigation, or information known to the officer is such as to indicate that the person being interrogated may be charged with the crime. When it becomes apparent to the investigating officer, or should be apparent from the circumstances, that the person being interrogated is likely to be charged with a crime, the officer must promptly warn him of his rights so that such person will not be required to give information that may incriminate him. Nevertheless, if a person, being warned, voluntarily makes statements against his interest, such statements may be introduced in evidence. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); State v. Meunier, 126 Vt. 176, 224 A.2d 922 (1966).
After having interrogated the defendant for about thirty (30) or forty (40) minutes, Smith confessed to having committed a crime. The officer testified that the confession was freely made, without threat or promise of reward. The officer *556 then arrested the defendant on a charge of burglary. It is, of course, the prerogative of the grand jury to make the charge in a formal indictment for which the defendant is to be tried, and the fact that the officer in the instant case arrested the defendant for burglary does not serve to indicate that the defendant was unlawfully arrested. State for Use of Kelley v. Yearwood, 204 Miss. 181, 37 So.2d 174 (1948); Barnett v. United States, 384 F.2d 848 (U.S. 5th Cir.1967).
The defendant was taken to the Highway Patrol headquarters where he signed a waiver and also signed a written confession. The defendant did not testify in the absence of the jury during the trial. There was no testimony offered to show that he had not voluntarily signed the waiver, nor did he deny his confession nor offer evidence to indicate that it was not voluntarily made.
An arrest within the meaning of the criminal law is the taking into custody of another person by an officer or a private person for the purpose of holding him to answer an alleged or suspected crime. 6 C.J.S. Arrest § 1, page 570 (1937). One who voluntarily accompanies an officer to a place where he may be interviewed is not under an arrest. Miranda v. Arizona, supra. Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965).
The pertinent parts of Section 2470, Mississippi Code 1942 Annotated (Supp. 1968), are in the following language:
"An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. * * *"
It is apparent, therefore, that the officer had sufficient grounds upon which to arrest the defendant after he had confessed to an indictable offense.
The defendant based his objection to the introduction into evidence of the confession, the testimony with reference to the taking of defendant's fingerprints, and the testimony with reference to the identification of defendant, upon the ground that this evidence was obtained from the defendant at a time when he was being unlawfully held in custody and was refused the aid of an attorney.
We do not agree with this contention because we are satisfied that the record reveals a lawful arrest after his statement to the investigating officer. The officer also had a right to take the picture and fingerprints of the defendant after his arrest. Section 2610, Mississippi Code 1942 Annotated (Supp. 1968). See also Ladner v. Walker, 184 So.2d 401 (Miss. 1966).
In the case of United States, Petitioner v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court pointed out that to require a prisoner to exhibit himself for the purpose of identification did not violate the prisoner's constitutional rights against self-incrimination.

IV.
The appellant argues that the juvenile laws, particularly Section 7185-05, Mississippi Code 1942 Annotated (Supp. 1968), are of such "irrational disparities" in the treatment of offenders as to violate the Fourteenth Amendment of the Constitution of the United States. He cites Section 2011, Mississippi Code 1942 Annotated (1952) and says that "if the appellant had been charged with assaulting (the victim) with intent to rape, maim or even murder her, he would have been remitted to custody for rehabilitation as a juvenile offender." *557 The trouble with this argument is that the appellant was charged with rape, which carries with it the death penalty, and the Youth Court had no jurisdiction of this offense. See Section 7185-15, Mississippi Code 1942 Annotated (1952).
The testimony as to the age of the appellant is to the effect that he was "nineteen or eighteen" at the time of the trial. The Youth Court has no jurisdiction over any young person eighteen (18) years of age for any cause (Section 7185-09, Mississippi Code 1942 Annotated [Supp. 1968]), unless the child is being held under an order made prior to his eighteenth (18th) birthday (Section 7185-04, Mississippi Code 1942 Annotated [1952]).
Moreover, the argument in this case that the appellant is a child is fallacious. It appears from the record that he is a large, young negro man, grown in all respects except age. According to this record, he has committed a crime for which he could have been sentenced to suffer the death penalty. We hold that the juvenile laws of the State of Mississippi are not applicable.
The attorneys for the appellant contend that they should have been furnished a psychiatrist by the court to aid them in the trial of the charge against the defendant. We agree that the court could have appointed a psychiatrist to examine the defendant in this criminal trial (Section 2575.5, Mississippi Code 1942 Annotated [Supp. 1968]), but in order to obtain the services of a psychiatrist by a court order there must have been some evidence introduced, or fact acquired from some observation of the court, to indicate the necessity of psychiatric aid. McGinnis v. State, 241 Miss. 883, 133 So.2d 399 (1961); Lipscomb v. State, 76 Miss. 223, 25 So. 158 (1899); Frierson v. State, 250 Miss. 339, 165 So.2d 342 (1964); King v. State, 210 So.2d 887 (Miss. 1968). The only reason given by the attorneys, in the case at bar, to the trial court was that "the very nature of the case called for the aid of a psychiatrist." There is nothing in the record to indicate any mental deficiency of the appellant. We are of the opinion that the court properly overruled this request of the attorneys for the appellant.
A careful examination of the record in this case reveals no reversible error, and for that reason the judgment of the trial court should be, and is hereby affirmed.
Affirmed.
GILLESPIE, P.J., and JONES, BRADY and INZER, JJ., concur.